Maria Emella FAMILIA DE BOOM et al., Plaintiffs–Appellees,

v.

AROSA MERCANTIL, S.A. and Inversiones Calmer, S.A., Defendants–Appellants.

No. 79–1964.

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1980.

Rehearing and Rehearing En Banc Dec. 17, 1980.

Terry P. Ayre, Houston, Tex., for defendants–appellants.

Paul H. Dué, Baton Rouge, La., for plaintiffs–appellees.

Before RUBIN, HENDERSON and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

This is an appeal from a default judgment entered against the defendants, Arosa Mercantil, S.A. ("Arosa") and Inversiones Calmer, S.A. ("Inversiones"), for failure to comply with the district court's order compelling answers to interrogatories pursuant to Fed.R.Civ.P. 37. These interrogatories concerned matters relevant to the determination of the court's in personam jurisdiction over defendants. Upon failure to answer, the court refused to consider the defendants' Rule 12(b) motion to dismiss for lack of jurisdiction and entered a default judgment assessing damages against both defendants jointly, severally, and in solido of $1,129,341.93 as a sanction for failure to make discovery. Fed.R.Civ.P. 37(b)(2)(c).

The issues on appeal are: 1) whether the district court had personal jurisdiction over the defendants upon which to base the default judgment; and 2) whether the district court abused its discretion in granting a default judgment for over $1,129,000 as a sanction for failure to answer interrogatories. Since we feel that the plaintiffs failed to adequately prove personal jurisdiction, we must reverse, and remand to the district court for further proceedings.

This case arises out of the sinking of the motor vessel UKOLA on the high seas of the Gulf of Mexico on January 19, 1977. The vessel, a freighter used for transporting bulk commodities, had sailed from the Dominican Republic on or about January 15, 1977. Approximately two days out of port, the vessel was directed to proceed to Galveston, Texas to offload her cargo of sugar. As a result of the sinking, twenty of twenty–three crewmen aboard the UKOLA died and the vessel and her cargo of sugar were lost.

This suit was filed by one survivor and the personal representatives of a number of the deceased seamen against Arosa, the owner of the M/V UKOLA and Inversiones, the vessel's charterer.[1] The plaintiffs alleged damages under the Jones Act, 46 U.S.C. § 688 (1976) and general maritime law. The merits of the claim have not been addressed.

After filing suit, plaintiffs filed six interrogatories directed to Arosa. There was no response of any kind by Arosa until a hearing on plaintiffs' motion to compel answers to the interrogatories on July 18, 1977 when Arosa entered a motion to dismiss for lack of personal and subject matter jurisdiction,[2] and for insufficiency of service of process. At this hearing the court ordered Arosa to file answers to these first interrogatories. Arosa filed the answers on September 2, 1977.

Plaintiffs also filed a second set of interrogatories on July 11, 1977, which are of primary concern to us now. Arosa moved to postpone discovery and to extend the

---

1. Favori Shipping Company was also joined as a defendant, but was not included in the default judgment order. The default judgment against Arosa and Inversiones was made a final judgment by order of the district court pursuant to Fed.R.Civ.P. 54(b), March 9, 1979.

2. Defendants argue that the default judgment cannot stand because the trial court lacked subject matter jurisdiction. What the defendants characterize as subject matter jurisdiction, the question of whether these plaintiffs are entitled to protection under the Jones Act, actually concerns the merits of the case. The trial court never determined the case on the merits and neither shall we.

time to answer interrogatories. These motions, along with the previously filed motion to dismiss and plaintiffs' motion to compel answers to these interrogatories, were argued at a hearing before the court September 14, 1977. The court refused to consider the defendant's motion to dismiss until plaintiffs could gather facts concerning jurisdiction through discovery. The court also ordered Arosa to answer within 60 days the interrogatories which concerned jurisdictional and related issues.

After Arosa failed to answer within the time specified by the court order, plaintiffs moved for sanctions to be imposed; specifically, a judgment of default on the issue of liability against Arosa. Plaintiffs also filed a motion to compel answers to interrogatories served five months before on Inversiones, which had been joined as a defendant. At a hearing on March 8, 1978, the court granted the interlocutory default judgment against Arosa for failure to comply with the court's previous order, and set the hearing on the question of damages for May 9, 1978. As to Inversiones, the court refused to consider its motion to dismiss for lack of jurisdiction, as it had done with Arosa's similar motion, until plaintiffs had the opportunity to complete discovery. The court granted Inversiones an additional fifteen days to answer the interrogatories. Inversiones "answered" within the fifteen day period, but the answers consisted primarily of statements that "defendant is unable at this time to answer."[3] None of the purported answers given by Inversiones were different from the answers given by Arosa, finally filed on March 23, 1978, after

the default judgment was granted, so it is doubtful that Inversiones itself contributed directly to any of the answers.

At the May 9 hearing, the district court included Inversiones in the default judgment.[4] The plaintiff introduced depositions of the survivors of the various seamen as evidence on the issue of quantum of liability against the defendants. On December 26, 1978, the district court entered judgment assessing damages against Arosa and Inversiones jointly, severally, and in solido, in the sum of $1,129,341.93 plus interest at nine per cent from January 19, 1977.[5]

It is well settled that a court has the jurisdiction to determine its own jurisdiction, subject to appellate review. *Atlantic Las Olas, Inc. v. Joyner*, 466 F.2d 496, 498 (5th Cir.); 13 Wright & Miller, Federal Practice and Procedure § 3536 (1975). The district judge has broad discretion to allow discovery on the jurisdictional issue in order to facilitate its determination. *Washington v. Norton Manufacturing, Inc.*, 588 F.2d 441 (5th Cir.), *cert. denied*, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979). When a party fails to answer interrogatories served upon it by the other party, the court, upon motion by the discovering party, may enter an order compelling answers. Fed.R.Civ.Pro. 37(a). If the party then fails to comply with that order, the rules further provide for sanctions by the court, one of which is an order of default judgment against the disobedient party. Fed.R.Civ.P. 37(b)(2)(c).

Assuming, without deciding, that the trial judge was within his discretion in imposing the default judgment against Aro-

---

3. The interrogatories consisted of such questions as: whether Inversiones was a corporation and, if so, its date and place of incorporation; whether Inversiones had a branch office in the United States; whether Inversiones carried on any type of business transaction in the United States; and other simple questions.

4. We emphasize that at the May 9 hearing the district court made it clear that it did not question the good faith of the attorney for Arosa and Inversiones. Rather, it found that the flagrant violation of the court's orders was attributable to the attorney's clients.

5. Eleven actions pending in five federal judicial districts, including this action, concerning the

sinking of the M/V UKOLA were presented before the judicial panel on multidistrict litigation, pursuant to 28 U.S.C. § 1407 (1976), to transfer all actions pending in districts other than the Southern District of Florida to that district for coordinated or consolidated pretrial proceedings with the actions pending there. The panel, however, refused to include this action in the consolidated proceeding as it "would not accomplish the goals of Section 1407". This case was severed from the other claims before the panel and remanded to the Southern District of Texas. *In re Sinking of the Motor Vessel UKOLA*, 462 F.Supp. 385 (Jud.Pan.Mult.Lit.1978).

sa and Inversiones for failure to comply with the order compelling discovery, that judgment is valid only if the court had personal jurisdiction over the defendants. The defendants assert that the record does not support jurisdiction under the Texas long–arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b (Vernon 1964),[6] nor does it support jurisdiction so as to comply with federal due process. They also argue that plaintiffs did not satisfy the requirements of Article 2031b for service of process.

■■ The burden is on the plaintiff to establish jurisdiction when challenged by the defendant. *Product Promotions v. Cousteau*, 495 F.2d 483 (5th Cir. 1974). In this case, the plaintiffs were foreclosed from presenting jurisdictional evidence in the exclusive possession of the defendants because the defendants refused to disclose the information in response to discovery procedures. That the plaintiffs may have been unable to obtain information from the defendants, however, does not exempt them from this burden of proof. For us to uphold the district court's order of default we must find facts in the record to support the court's exercise of personal jurisdiction over Arosa and Inversiones.

■ To establish personal jurisdiction over a non–resident defendant, the plaintiff must prove that the long–arm statute of the state in which the court sits confers

jurisdiction and that the exercise of jurisdiction under state law comports with federal notions of due process. *Cousteau*, 495 F.2d at 489. The Texas long–arm statute, under which the plaintiffs assert jurisdiction, has been interpreted by the Texas Supreme Court to reach "as far as federal constitutional requirements of due process will permit." *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977). Therefore, we turn immediately to the federal law question of constitutional due process.

In *International Shoe v. Washington*, 236 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court declared that a state could assert personal jurisdiction over a non–resident corporation provided it had "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.*, 326 U.S. at 317, 66 S.Ct. at 159, 90 L.Ed. at 102. Therefore, we must here decide if the defendants' contacts with Texas were sufficient to permit Texas to assert jurisdiction, and, if so, if the jurisdiction was asserted in the manner required by Rule 4, Fed.R.Civ.P., which permits service in the manner permitted by Texas law.

■ Due to the posture in which this case comes before us, the facts relevant to the jurisdictional issue do not appear on the

---

**6.** The Texas long arm statute, Tex.Rev.Civ. Stat. § 2031b (Vernon 1964), provides in pertinent part:

> Act of engaging in business in state as equivalent to appointment of Secretary of State as agent

> Sec. 3. Any foreign corporation, association, joint stock company, partnership, or non resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership, or non resident natural person of the Secretary of State of Texas as agent upon whom ser-

vice of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such corporation, joint stock company, association, partnership, or non resident natural person is a party or is to be made a party.

> \*    \*    \*    \*    \*    \*

> Delivery of process to Secretary of State; forwarding copy

> Sec. 5. Whenever process against a foreign corporation, joint stock company, association, partnership, or non resident natural person is made by delivering to the Secretary of State duplicate copies of such process, the Secretary of State shall require a statement of the name and address of the home or home office of the non resident. Upon receipt of such process, the Secretary of State shall forthwith forward to the defendant a copy of the process by registered mail, return receipt requested.

record. Therefore, we feel it is impossible for us to find personal jurisdiction in this case. Courts have been liberal in finding jurisdiction in cases involving nonresident corporate defendants, *see, e. g., Standard Fittings Co. v. Sapag, S.A.,* 625 F.2d 630 (5th Cir. 1980); *Southwest Offset, Inc. v. Hudco Publishing Co.,* 622 F.2d 149 (5th Cir. 1980); *Cousteau.* But on this record, the only contacts which the defendants have with Texas are that the UKOLA had been to Texas at least once before while Arosa was the owner and Inversiones was the charterer, and that the UKOLA was bound for Texas when the tragedy occurred. The answers to the interrogatories which were filed indicate that neither corporation had stockholders in Texas, or for that matter, in the United States. The record contains no proof of any contract for delivery of sugar in Texas, an agent in Texas, or any other facts which would be sufficient to satisfy the due process standard.

Although we refuse to find personal jurisdiction on the record as it is now, we feel that the plaintiffs should be given an opportunity to introduce those facts relevant to jurisdiction. If the defendant actually does have minimum contacts with the State of Texas, the plaintiff may be able to show it even though the defendant refuses to comply with discovery.

The plaintiffs ask that we find jurisdiction in this case through waiver. The Eighth Circuit, in *English v. 21st Phoenix Corp.,* 590 F.2d 723 (8th Cir.), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979), was faced with a situation much like the one presented here. In that case, the district court found the defendant corporation within its jurisdiction as a sanction for failure to respond to discovery. The court of appeals affirmed, recognizing that *in personam* jurisdiction may be obtained by actions of a party amounting to waiver. *Id.* at 728 n.5. The Fourth Circuit has also approved the use of the sanction of default judgment when the defendants refused to provide the information necessary to make these jurisdictional determinations. *Lekkas v. Liberian M/V Caledonia,* 443 F.2d 10 (4th Cir. 1971). There is no Fifth Circuit guidance on this precise point.

■ Although we are tempted to follow the Fourth and Eighth Circuits and hold that the defendants waived jurisdiction by their contumacious conduct, we must refrain from doing so. Unlike *21st Phoenix,* we have no finding by the district court that the defendants were doing business in Texas. We have only the facts on the record, which do not satisfy the due process requirement of jurisdiction. Without the necessary facts on the record we may not impose jurisdiction.

■ This leaves the district judge in a quandary in trying to enforce his discovery order, but that is a necessary result of the limitations of sovereignty under due process. Although the district court undoubtedly has jurisdiction to determine its own jurisdiction, it cannot, on its own, establish jurisdiction. The Federal Rules of Civil Procedure determine methods of service of process, venue and other procedural requirements for exercising jurisdiction in federal actions. They relate only to procedure, however, and not to principles of jurisdiction except insofar as service of process, made in accordance with the rules, itself is a way of demonstrating or completing the court's jurisdiction. Although Rule 37 allows for the imposition of a default judgment as a sanction for failure to comply with discovery, it may be used only against parties who are within the court's jurisdiction.

■ As with a challenge to jurisdiction, when service of process is challenged, the party on whose behalf service is made has the burden of establishing its validity. 5 Wright & Miller, *supra,* § 1353 (1969). Although the plaintiffs were never given an opportunity to find or present facts through discovery indicating valid service, we must again agree with the defendants, as the plaintiffs did not satisfy this burden. There is no showing on the record of an agency relationship between Arosa and Lamonte, Burns & Co., upon whom service was made through the Texas Secretary of State, nor is there a showing of any connec-

tion between Inversiones and the Miami address to which process was mailed. Moreover, when service is made upon the Secretary of State pursuant to Article 2031b, the Texas courts require the record to show that the Secretary of State actually forwarded the process to the defendant. *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 96 (Tex.1973). There is no such showing in this record.

Texas courts also require an allegation in the complaint reciting the facts authorizing long–arm service of process. *McKanna v. Edgar*, 388 S.W.2d 927 (Tex. 1965). This court, however, has held that allegations, in the complaint are not necessary when the claim is filed in federal court if the facts appear elsewhere in the record. *Eyerly Aircraft Co. v. Killian*, 414 F.2d 951 (5th Cir. 1969). Here such facts do not appear in the complaint or anywhere else in the record.

Although service of process and personal jurisdiction may be waived by a party, we cannot find waiver by the defendants here. There is no waiver so long as the defendants expressly limited their appearance to the determination of those very issues, which was done by Arosa and Inversiones in this case.

Accordingly, we must reverse the default judgment entered by the district court. We do feel, however, that the plaintiffs are entitled to another opportunity to develop additional facts which would support jurisdiction and valid service of process.

REVERSED AND REMANDED.