Alyson A. HABETZ, by her Next Friends, Leonard J. HABETZ and Deanna H. Habetz, Plaintiffs–Appellants, Cross–Appellee,

v.

LOUISIANA HIGH SCHOOL ATHLETIC ASSOCIATION, an Unincorporated Association, Defendant–Appellee Cross–Appellant,

and

Dr. Thomas G. Clausen, in his Official Capacity as Superintendent of Education of the State of Louisiana, Defendant–Appellee.

No. 89–3584.

United States Court of Appeals, Fifth Circuit.

Oct. 25, 1990.

Katherine Wheeler, Baton Rouge, La., for Alyson A. Habetz et al.

Robert Bradley Lewis, Talley, Anthony, Hughes & Knight, Bogalusa, La., for La. High School Ath. Assoc.

Susan Stafford, La. Dept. of Educ., La. Dept. of Justice, Div. of Risk Litigation, Baton Rouge, La., for Dr. Thomas G. Clausen.

Before GARZA, JOLLY, and JONES, Circuit Judges.

GARZA, Circuit Judge:

This case is before us for a second time. It concerns mainly the question of whether the plaintiffs/appellants were entitled to attorney's fees. The court below decided that it lacked jurisdiction of the underlying

suit brought by the plaintiffs and therefore refused to allow attorney's fees under 42 U.S.C. § 1988. Because the lower court at least had jurisdiction to decide whether plaintiffs stated a claim arising under federal law, we reverse and remand.

## I. The Facts

Alyson Habetz, a female high school freshman, sought to try out for and, if selected, compete on her high school baseball team, which was comprised of all male players. The officials at Notre Dame High School in Crowley, Louisiana, prevented her from trying out under the guise of the Louisiana High School Athletic Association ("LHSAA") rules, which prohibited girls from participating on boys sports teams. The regulations delineated boys and girls sports, and, with the exception of mixed doubles in tennis, the two genders were not commingled on the same team.

The LHSAA is a statewide private nonprofit voluntary association comprised of both public and private schools. While the majority of schools belong to the LHSAA, they do so at their own free will and not pursuant to any state law. Both sides make extended assertions as to the control held by the Louisiana Department of Education. Dr. Thomas Clausen was, at the time the suit was filed, the chief executive official of the Louisiana Department of Education.

Without question, LHSAA had a system designed which separated boys and girls competition, with the exception of mixed doubles in tennis. Appellees point to the Olympics, the NCAA, the U.S. Olympic Festival, and virtually every other international sports organization which separates the competition of the two sexes as justification for their system. Appellants counter with the absence of proof that the two sexes are not equal and cannot compete on the same level.

Before the case was fully adjudicated, LHSAA decided to change the rule. The LHSAA rule, as changed, now allows a girl to participate in boys sports if the particular school does not offer a comparable girls sport.[1] The LHSAA contends that the change was made pursuant to their own free will and they are free to change this rule at any time, and could go back to the old rule if they desire.

## Prior Procedure

On February 4, 1987, Alyson Habetz and her parents filed suit for declaratory and injunctive relief against LHSAA and the Louisiana Department of Education through its then executive officer, Dr. Thomas Clausen. Plaintiffs sought to enjoin Defendants from enforcing rules of the LHSAA which barred girls from playing baseball on interscholastic high school baseball teams.

After denying a temporary restraining order, the District Court, on March 11th and 12th, conducted a hearing on Plaintiffs' motion for a preliminary injunction. On March 13, 1987, the District Court denied Plaintiffs' request.

Plaintiffs appealed the decision to this Court. Briefs were filed and oral arguments heard. Then, the LHSAA voted to change the rule.[2] This change rendered the appeal moot as the underlying dispute had been settled. The panel decision concluded that the case was moot and should be dismissed leaving open the opportunity to pursue attorney's fees. 842 F.2d 136. Not surprisingly, this is exactly what happened, with both sides claiming victory.

On August 1, 1988, Plaintiffs filed a motion to dismiss the complaint and for attorney's fees and costs under 42 U.S.C.

---

1. In this case, if girls softball is not offered, then girls are eligible to play boys baseball.

2. There is significant dispute between the parties as to the reasoning behind the rule change.

 Appellants, of course, contend that the LHSAA saw the writing on the wall and decided to quit rather than get fired. Their claim is that the LHSAA realized their system of organizing sporting events was unconstitutional and changed it as a result of this lawsuit.

 Appellees contend that the delegates, through their democratic process, elected to change the system. They contend that the change was not as a result of the lawsuit but rather a changing perspective in their delegates.

§ 1988. On August 2nd and 4th, the District Court entered orders dismissing the complaint and reserving to Plaintiffs and, upon request, to Defendant LHSAA the right to seek attorney's fees. On January 3, 1989, Defendant LHSAA filed a motion for attorney's fees and costs as well as a motion for sanctions under F.R.C.P. Rule 11.

On May 26, 1989, the District Court conducted a pre-trial conference and signed a pre-trial order scheduling a hearing on the attorney's fees claims on September 27, 1989. At the pre-trial conference, the District Court asked counsel for all parties "to file a stipulation allowing the Court to decide the issue of jurisdiction and state action based on the record of the preliminary injunction." Plaintiffs' counsel objected to such a stipulation, informing the judge and opposing counsel that she intended to introduce additional evidence on the jurisdiction question.

On June 14, 1989, counsel for the Defendant LHSAA noticed the Rule 12(b) motion to dismiss along with noticing the motion for attorney's fees and Rule 11 sanctions to be heard on August 4, 1989. On August 4, 1989, the District Court conducted a hearing, converted the Defendants' Rule 12(b) motions to a Rule 56 summary judgment motion and then granted summary judgment, thereby dismissing the case. The District Court denied Plaintiffs' motion for attorney's fees and did not rule on the Defendants' motions for attorney's fees and Rule 11 sanctions. Plaintiffs appealed the decision and Defendants asserted their issues on cross appeal.

Appellants first complain of the district court's conversion of the Defendants' Rule 12(b)(6) motions to Rule 56 motions for summary judgment and subsequent dismissal of the case for. want of jurisdiction. Our disposition does not require us to rule on this contention.

## II. Jurisdiction

Appellants asserted two avenues by which jurisdiction may be vested. First, the LHSAA regulations constituted "state action" under federal question jurisdiction. Second, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., vests subject matter jurisdiction by Congress's passage of the Civil Rights Restoration Act of 1987, P.L. 100–259, 102 Stat. 28.

Since we hold that the district court had jurisdiction at least to determine whether or not the LHSAA regulations constituted "state action" giving rise to federal question jurisdiction, we do not reach the plaintiffs' second assertion.

### State Action

The district court predicated its judgment on the grounds that LHSAA is not a "state actor" for the purposes of Plaintiffs' 14th Amendment and 42 U.S.C. § 1983 claims and, therefore, the Court lacks jurisdiction under federal question jurisdiction to award attorney's fees under 42 U.S.C. § 1988. In support of its judgment, the District Court relies on the United States Supreme Court decisions in *NCAA v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), and *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), for the proposition that the activities of athletic associations such as the NCAA, the Southwest Conference, and state associations such as LHSAA and the Indiana High School Athletic Association do not constitute state actors.

The problem that exists in the legal authority is footnote 13 in *Tarkanian*.[3] This Court's decision in *Louisiana High School Athletic Association v. St. Augustine High School*, 396 F.2d 224 (5th Cir.1968), is cited therein. In *St. Augustine*, our Court specifically held that the LHSAA was a state actor for the purposes of section

---

**3.** Footnote 13 provides:

The situation would, of course, be different if the membership consisted entirely of institutions located within the same State, many of them public institutions created by the same sovereign. See ... *Louisiana High School Athletic Association v. St. Augustine High School*, 396 F.2d 224 (5th Cir.1968)....

1983. *St. Augustine*, 396 F.2d at 227. *St. Augustine* was decided when the test for state action was the "entanglement theory". In subsequent cases the Supreme Court rejected the "entanglement theory" and adopted the "fairly attributable" theory.[4]

 Whether *St. Augustine* remains controlling in this circuit after *Blum, Rendell–Baker,* and *Tarkanian* and its footnote 13 is a question we need not decide. Although appellee LHSAA has made some strong arguments on the state action issue in this round of litigation, it could have obtained a ruling on the issue in the initial litigation had it chosen to defend the case on that basis. *See* Fed.R.Civ.P. 12(b)(1). As we have said before, the question before us is who is the prevailing party for the purpose of § 1988. Plaintiff asserted more than a colorable claim of jurisdiction. Clearly the district court had jurisdiction to determine its own jurisdiction. *Familia de Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1137 (5th Cir.1980), *cert. denied*, 451 U.S. 1008, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981). That is enough in the context of this case. We decline to decide controlling issues of constitutional and statutory law in § 1988 fee disputes.

We remand the case for the court to determine who, if anyone, was the prevailing party in this case under the teachings of *Hennigan v. Ouachita Parish School*, 749 F.2d 1148 (5th Cir.1985).

Applying *Hennigan* to the facts of this proceeding it seems that the plaintiffs may be entitled to some kind of fees. Since we feel that the plaintiffs' claim had colorable legal merit, the lower court is free to determine whether or not the plaintiffs' lawsuit was the cause of the rule change of the LHSAA, and if it was, what, if any, attorney's fees should be granted to plaintiffs.

REVERSED AND REMANDED.

**4.** *See NCAA v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), and *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

In *Blum*, the Supreme Court stated that the complaining party must show "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785, citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). The Court further explained "[t]he purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains. The importance of this assurance is evident when, as is this case, the complaining party seeks to hold the State liable for the actions of private parties." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785.