# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 24, 2009

Charles R. Fulbruge III
Clerk

No. 08-30399

FRANK C MINVIELLE LLC

Plaintiff-Appellant

v.

ATLANTIC REFINING CO, formerly known as Atlantic Richfield Co; OXY
USA INC, formerly known as Cities Service Oil Co; PACIFIC ENTERPRISES
OIL CO (USA), formerly known as Sabine Production Co Inc; MOSAIC
GLOBAL OPERATIONS INC, formerly known as IMC Global Operations Inc

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:05-cv-1312

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Frank C. Minvielle, LLC ("Minvielle") appeals the
district court's order awarding summary judgment to Defendants-Appellees
Atlantic Refining Co. ("Atlantic Refining"), OXY USA, Inc. ("Oxy"), Pacific
Enterprises Oil Co. ("Pacific Oil"), and Mosaic Global Operations, Inc. ("Mosaic")

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

(collectively "Appellees") on the ground of res judicata. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

This appeal arises from the second of two lawsuits in which Minvielle has asserted materially identical claims for alleged environmental damage stemming from a nearly fifty-year-old oil lease.

In September 1961, Juliet Bourgeois Delcambre ("Delcambre") entered into an oil, gas, and mineral lease (the "1961 lease") with Atlantic Refining to explore and drill for oil on land that she owned in Iberia Parish, Louisiana ("the property"). Pursuant to the lease, a well was drilled on the property, and various companies operated the well according to the terms of an Operating Agreement between Atlantic Refining and the other companies. Appellees in this case are former parties to or the assignees and/or successors-in-interest of the parties to this agreement.

In 1974, Petro-Lewis Funds, Inc. ("Petro-Lewis") purchased an interest in the property and became the operator of the well. In December 1977, it plugged and abandoned the well and the lease expired. When Delcambre died over a decade later, her daughter and grandchildren ("the Cowans") inherited the property. In 1998, the Cowans sold the property to Minvielle & Segura, LLC by an Act of Cash Sale, retaining a one-half mineral interest. In November 2001, Frank C. Minvielle acquired full ownership of Minvielle & Segura, LLC and changed its name to Frank C. Minvielle, LLC.

### B.    *Minvielle I*

In August 2003, Minvielle sued, among others, IMC Global Operations, Inc. ("IMC")—Petro-Lewis's successor and Mosaic's predecessor—in Louisiana state court, bringing both contract and tort claims for alleged contamination of the property. The defendants removed to the Western District of Louisiana on

the basis of diversity, *see Frank C. Minvielle, L.L.C. v. IMC Global Operations, Inc. (Minvielle I)*, 380 F. Supp. 2d 755 (W.D. La. 2004), after which all remaining defendants except IMC were dismissed. IMC filed various motions to dismiss, including one under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, which the district court converted to a motion for summary judgment. The court granted the motion. As to the contract claims, the court explained that under Louisiana law the right to sue for the property damage is a personal right, and it found both that Minvielle did not receive an assignment of the right to sue for prior damages from the Cowans at the time of the sale and that the 1961 lease did not create a stipulation *pour autrie* in Minvielle's favor. *Id.* at 766, 770. It therefore held that Minvielle lacked standing to bring the contract claims against IMC. *Id.* at 770. As to the tort claims, the court noted that under Louisiana law, "the owner of land at the time of the alleged damages is the person with the real and actual interest to assert the claim for damages to the land," *id.* at 770, and that Minvielle sought damages arising from operations that occurred prior to its purchase of the property, *id.* at 772. Accordingly, it found that Minvielle lacked standing to bring the tort claims against IMC.[1] *Id.*

Minvielle moved for reconsideration, arguing that at the time of the 1998 Act of Cash Sale, the Cowans intended to convey all rights to Minvielle & Segura, including the right to sue for past damages to the property. In support, Minvielle asserted that it had procured an amendment to the Act of Cash Sale reflecting this purported agreement, and it informed the court that it would file the document with the court. Minvielle, however, never filed the purported amendment. On January 12, 2005, the district court denied Minvielle's motion

---

[1] On the same day that the court granted IMC's motion for summary judgment, IMC filed a third-party complaint against Atlantic Refining, Oxy, and Pacific Oil, among others, asserting claims for contribution on the ground that each was a former party to or successor-in-interest of a party to the Operating Agreement. Because of the court's decision in its favor, however, IMC never served this complaint.

for reconsideration, reiterating its previous ruling and noting that Minvielle had neither amended the Act of Cash Sale nor demonstrated that a Louisiana court would allow such an amendment. Minvielle did not appeal the judgment, and it became final.

## C. *Minvielle II*

In June 2005, Minvielle again filed suit in Louisiana state court, alleging claims identical to those in *Minvielle I*, against, among others, Atlantic Refining—an original party to the 1961 lease—and IMC, Oxy, and Pacific Oil, each of which it concedes is a successor-in-interest by sublease or assignment of the 1961 lease. Mosaic was substituted for IMC, and it removed the case to the Western District of Louisiana on the basis of diversity. *See Frank C. Minvielle, LLC v. Atl. Ref. Co. (Minvielle II)*, Civil Action No. 05-1312, 2007 WL 2668715 (W.D. La. Sept. 6, 2007). Minvielle expressly stated in its complaint that the claims in this suit were identical to those in *Minvielle I* and further agreed with the district court that "there's nobody who sits at the table in [*Minvielle II*] that didn't sit [at] the table [in *Minvielle I*]." However, Minvielle argued that it now had standing to assert its claims because, after the final judgment in *Minvielle I*, it executed an amendment to the Act of Cash Sale—the same purported amendment discussed in *Minvielle I*—which provided that the parties to that agreement intended to assign to Minvielle the right to sue for previous damage to the property. Notably, the alleged amendment, by its very terms, did not amend the Act of Cash Sale or confer any new rights upon Minvielle; rather, as Minvielle acknowledged, it purported only to clarify the original intentions of the

4

parties to the agreement.[2]  Minvielle nonetheless argued that the amendment gave it standing to sue.

Appellees moved to dismiss on the ground of res judicata, arguing that Minvielle could not relitigate the question of its standing to assert contract and tort claims against them, as this was the exact same issue the court decided in *Minvielle I*.  The district court converted the motion into one for summary judgment and granted it.  In so doing, the district court explained that "[t]he claims asserted are identical to those asserted in *Minvielle I*, there is commonality of parties, and the court's jurisdictional ruling in *Minvielle I* is a final and valid judgment."  *Id*. at *7.[3]  It further noted that the amendment to the Act of Cash Sale—which by its terms did not convey new rights and which even Minvielle's counsel acknowledged was merely an "act of correction" and "clarification"—did not cure the res judicata effect of the *Minvielle I* judgment. *See id*. at *6.

## II. JURISDICTION AND STANDARD OF REVIEW

At oral argument, Minvielle challenged, for the first time, the subject-matter jurisdiction of the district court in *Minvielle I* and *II* and of this court in

---

[2] Under Louisiana law, an actual amendment attempting to change the original agreement would have been ineffective.  *See Lejuene Bros. v. Goodrich Petroleum Co.*, 981 So. 2d 23, 31 (La. Ct. App. 2007) (noting "Louisiana's longstanding rule that the right to damages conferred by a lease is a personal right that must be specifically assigned at the time of sale").

[3] Although the district court's opinion in *Minvielle II* analyzes only the question of *Minvielle I*'s res judicata effect on *Minvielle II*, the court appears to have ruled for Appellees on two grounds:

> Accordingly, defendants' motions for summary judgment based on res judicata are GRANTED. Because the *Minvielle I* finding that plaintiff did not have standing has res judicata effect, the court in the instant case does not have subject matter jurisdiction.

*Minvielle II*, 2007 WL 2668715, at *7.  Given that the district court addressed the entirety of its opinion to the question of res judicata and expressly granted Appellees' motion on that ground, we agree with Appellees that the court's single mention of jurisdiction in its concluding statement can be disregarded as erroneous and unnecessary dicta.

this appeal, and we ordered supplemental briefing. Having reviewed the briefing, we find Minvielle's contentions to lack merit.

As a preliminary matter, although the district court in *Minvielle I* certainly had jurisdiction to determine its own jurisdiction, *see United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Habetz ex rel. Habetz v. La. High Sch. Athletic Ass'n*, 915 F.2d 164, 167 (5th Cir. 1990), Minvielle challenges the propriety of removal in *Minvielle I*, arguing that the case should have been remanded to state court. The Supreme Court has explained, however, that "[a] party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982); *cf. Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1293 (5th Cir. 1992) ("If the parties against whom judgment was rendered did not appeal, the judgment becomes final and the court's subject matter jurisdiction is insulated from collateral attack.") This is true even if the earlier judgment was incorrect. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."). If the *Minvielle I* court should have remanded rather than granted summary judgment, its judgment could have been reversed on appeal, but Minvielle chose not to appeal. Accordingly, the judgment became final and is now insulated from Minvielle's collateral attack. *See Des Moines Navigation & R.R. Co. v. Iowa Homestead Co.*, 123 U.S. 552, 559 (1887).

The district court also had jurisdiction in *Minvielle II*. As we have explained,

> It is well settled that a federal district court can exercise ancillary jurisdiction over a second action in order to secure or preserve the fruits and advantages of a judgment or decree rendered by that court in a prior action. Such jurisdiction is appropriate where the effect of an action filed in state court would effectively nullify the judgment of a prior federal action. This is true even where the federal district court would not have jurisdiction over the second action if it had been brought as an original suit.

*Royal Ins. Co. of Am.*, 960 F.2d at 1292 (citations, alteration, and internal quotation marks omitted). This is precisely the case here. Notwithstanding Minvielle's attempt to frame the issue below as a question of standing, the issue was simply one of res judicata—whether the court's *Minvielle I* decision precluded Minvielle from arguing that it has standing to sue for the alleged environmental damages in *Minvielle II*. The question of standing is precisely the question that *Minvielle I* addressed, and there have been no changed circumstances that would warrant bypassing the bar of res judicata. Minvielle's second suit, if successful, would nullify the district court's judgment in *Minvielle I*. Thus, the *Minvielle II* court properly had ancillary jurisdiction to preserve the effect of its *Minvielle I* judgment.

We have jurisdiction over the district court's final order granting Appellees summary judgment under 28 U.S.C. § 1291.[4] "We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court." *Aubris Res. LP v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 483, 486 (5th Cir. 2009). "The *res judicata* effect of a prior judgment is a question of law that we review *de novo*." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004).

---

[4] In its supplemental briefing, Minvielle argues for the first time that this court should abstain from exercising its jurisdiction under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). As the issue on appeal is simply the res judicata effect of a prior judgment, however, *Burford* abstention is inapplicable. To the extent that Minvielle seeks to collaterally attack the final, unappealed judgment in *Minvielle I* on this ground, we reject its argument as untimely.

## III. DISCUSSION

### A. Choice of Law

Although each appellee moved to dismiss *Minvielle II* on the basis of res judicata, the parties do not appear to agree on whether Louisiana or federal res judicata law applies.[5]  Under our pre-2001 precedent, federal res judicata law would clearly apply.  *See Mowbray v. Cameron County*, 274 F.3d 269, 281 (5th Cir. 2001) ("We apply federal law to determine the preclusive effect of a federal judgment, even if that judgment was based on state law.")  However, in *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), the Supreme Court suggested that state res judicata law, incorporated as federal common law, should apply.  There, the Court held that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity," but it adopted "as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* at 508.  As we have explained, the *Semtek* Court held "that while federal law ultimately determines whether a federal judgment precludes a subsequent action or argument, when the basis of the original court's jurisdiction is diversity of citizenship, federal courts should apply the law of the forum state unless the state law is incompatible with federal interests." *Am. Home Assurance Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 271 n.20 (5th Cir. 2005) (citing *Semtek*, 531 U.S. at 508).  *But see Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 396 n.7 (5th Cir. 2001) ("*Semtek* did not address the role of state law in determining the preclusive effect of *jurisdictional findings* made by a federal court sitting in diversity.").

---

[5] Atlantic Refining does not differentiate between federal and Louisiana res judicata law, Mosaic argues that Louisiana law applies, Oxy and Pacific argue that Louisiana law applies but, alternatively, that federal res judicata law should apply, and Minvielle argues that the court should look to Louisiana law.  The district court, without much discussion, applied Louisiana res judicata law.

In this case, however, we need not weigh the effect of *Semtek*, as Louisiana courts "'have repeatedly confirmed that federal law is applicable to consideration of whether a federal court judgment has res judicata effect.'" *Jones ex rel. Jones v. GEO Group, Inc.*, 6 So. 3d 1021, 1025 (La. Ct. App. 2009) (quoting *Green v. Iberia Par. Sch. Bd.*, 945 So. 2d 940, 943 (La. Ct. App. 2006)). Thus, whether we look to Louisiana law or federal law to provide the rule of decision, the result is the same: federal res judicata law applies.

## B. Res Judicata

Under federal law, the test for res judicata contains four elements:

> (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citing *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004)). Here, the second and fourth elements are not in dispute. Both *Minvielle I* and *II* arise out of the same alleged breaches of contract and tortious conduct, Minvielle expressly admits that its claims in *Minvielle I* and *II* are identical, and, as explained above, Minvielle cannot now challenge the jurisdiction of the district court in *Minvielle I*, which certainly had jurisdiction to determine its own jurisdiction. *See Ruiz*, 536 U.S. at 628; *Habetz*, 915 F.2d at 167. The only elements that Minvielle challenges are the first and third elements: whether the judgment in *Minvielle I*, which was final and unappealed, was a judgment on the merits, and whether the parties to each case are identical or in privity. Both challenges lack merit.

### 1. Judgment on the Merits

Minvielle first asserts that the *Minvielle I* decision was not a judgment on the merits. Although it is technically correct, this does not preclude application

of res judicata in this case. In *Minvielle I*, the district court granted IMC summary judgment based upon Minvielle's lack of standing, a jurisdictional issue. *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006) ("[T]he issue of standing is one of subject matter jurisdiction . . . ."). Although a jurisdictional ruling is technically not an adjudication on the merits, "[i]t has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal." *Ins. Corp. of Ireland*, 456 U.S. at 702 n.9; *accord Beiser v. Weyler*, 284 F.3d 665, 673 (5th Cir. 2002). As we have explained,

> Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merit so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims.

*Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980) (per curiam). Thus, because the unappealed *Minvielle I* judgment—which adjudicated the question of Minvielle's standing to bring the claims it now asserts—is unquestionably final, it satisfies this res judicata requirement.

### 2. Identity of the Parties

Notwithstanding its previous agreement that "there's nobody who sits at the table in [*Minvielle II*] that didn't sit [at] the table in [*Minvielle I*]," Minvielle argues on appeal that res judicata cannot apply to Atlantic Refining, Oxy, and Pacific Oil, because they were not parties to *Minvielle I*.[6] Res judicata applies only when the parties in the second suit are identical to or in privity with the parties in the first suit. *Test Masters Educ. Servs., Inc.*, 428 F.3d at 571. Notably, as the Supreme Court recently reaffirmed in *Taylor v. Sturgell*, 128 S. Ct. 2161 (2008), the parties need not actually be identical: "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal

---

[6] Minvielle concedes that IMC, now Mosaic, was a party in both *Minvielle I* and *II*.

relationship[s]' between the person to be bound and a party to the judgment. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property . . . and assignee and assignor." *Id.* at 2172 (alteration in original, citations omitted).

Here, Minvielle expressly concedes in its brief that "IMC (Mosaic), Oxy, and Pacific are successors-in-interest by sub-lease or assignment of the original 1961 mineral lease between Delcambre and [Atlantic Refining]." It thus admits that Oxy and Pacific Oil are succeeding owners of property and/or assignees, and that Atlantic Refining is a preceding owner of property and/or assignor. Therefore, although Oxy, Pacific Oil, and Atlantic Refining were not parties to *Minvielle I*, the identity-of-the-parties requirement of res judicata is met.

Accordingly, all four elements required for res judicata to apply are satisfied, and the district court properly held the judgment in *Minvielle I* to be res judicata on this second suit.

## IV. CONCLUSION

For the reasons stated above, we hold that the district court properly granted Appellees' motion for summary judgment on the basis of res judicata. We therefore AFFIRM the judgment of the district court.

AFFIRMED.

E. GRADY JOLLY, Circuit Judge, specially concurring:

I am happy to concur. The standing issue in these cases has always referred to the lack of statutory standing under Louisiana law because of the failure of the plaintiff to demonstrate a cognizable interest in the *res* at issue. The standing issue never constituted a challenge to the personal or subject-matter jurisdiction of the federal court. Consequently, it is quite correct to say that *Minvielle I* was a decision on the merits of the plaintiff's claim, that the case now before us is identical in all relevant respects to *Minvielle I*, and that res judicata is a bar to this case.