**Clayton FREEMAN**

v.

**WITCO CORP., et al.**

**No. Civ.A. 971448.**

United States District Court, E.D. Louisiana.

May 5, 2000.

---

Thomas A. Gennusa, II, Law Office of Thomas A. Gennusa, II, Leonard Joseph Cline, Leonard J. Cline, PLC, Metairie, LA, for Plaintiff.

Sherman Gene Fendler, Carol Welborn Reisman, Harold J. Flanagan, Liskow & Lewis, New Orleans, LA, Kenneth Benjamin Krobert, Borrello, Huber & Dubuclet, Metairie, LA, Carl L. Aspelund, Golden & Fonte, Metairie, LA, Charles Bruce Colvin, Michael R.C. Riess, House, Kingsmill, Riess & Seabolt, LLC, New Orleans, LA, for Defendants.

Jedd Spencer Malish, Burke & Mayer, Sidney W. Degan, III, Foster Parlange Nash, III, Degan, Blanchard & Nash, New Orleans, LA, for Intervenor–Plaintiff.

## MEMORANDUM OPINION

BARBIER, District Judge.

On January 19–21 and 25–27, the main demand in the above-captioned matter came on for trial by jury. Following a judgment in favor of plaintiff, the Court set trial of the third-party demand, without a jury, for February 8, 2000. In an order entered on January 31, 2000, the Court granted the request of counsel for the parties to continue the trial and re-set the matter for trial on briefs. Accordingly, a deadline of February 29, 2000 was set for the filing of pre-trial memoranda and proposed findings of fact and conclusions of law, at which time the Court took the trial of the third-party demand under advisement. Now, having reviewed the record, the memoranda of the parties, and applicable law, the Court stands ready to rule. For the reasons that follow, the Court finds that the indemnity provision which Witco seeks to enforce is ineffective and unenforceable.

## BACKGROUND

This matter arises out of an explosion which occurred at Witco's facility on December 28, 1996. Plaintiff, Clayton Freeman, an employee of third-party defendant Gulf South Services, Inc. ("GSS"), was injured in the explosion and filed the main demand seeking recovery for his damages. Approximately one week after the explosion, Witco sent GSS the purchase order for the job, number 820–5477, printed on Witco form 1246.[1] Form 1246 bears writing on both sides, and on the reverse contains language which provides:

**4. HOLD HARMLESS**

Seller agrees to protect, indemnify, and save harmless buyer form any loss, cost, damage or expense arising from any claim of death or injury to persons or damage to property arising out of, or attributable to, the item(s) supplied hereunder, including attorney's fees, except where such loss, cost, damage or expense results from the sole negligence of Buyer.

Relying on this provision, Witco filed a third-party claim against GSS, arguing

1. Exh. 71.

that GSS was liable to indemnify Witco for Witco's losses arising out of the December 1996 explosion.

While the parties do not dispute that the purchase order was not sent to GSS until after the explosion, Witco maintains that the indemnity agreement was effective, because (1) based on Louisiana Civil Code articles 1927 and 1942, GSS implied its consent to the indemnity agreement; and (2) GSS's consent to the indemnity agreement is implied by the parties' prior course of dealing. In contrast, GSS argues that the agreement is not effective because there was no meeting of the minds on the indemnity provision, that circumstances necessary for "implied consent" to be effective were not present, and that the course of dealing between the parties indicates a lack of agreement (rather than agreement) on the indemnity provision. In so arguing, GSS emphasizes the fact that the burden of proving the contract lies with Witco and contends that Witco has not met its burden of proof.

### DISCUSSION

#### The Purported Indemnity Contract Must Be Strictly Construed.

■ As third-party plaintiff and the party seeking to enforce the indemnity provision at issue, Witco bears the burden of proving the existence and applicability of the indemnity provision it seeks to enforce. In Louisiana, a "contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is **expressed in unequivocal terms.**" *Perkins v. Rubicon, Inc.,* 563 So.2d 258, 259 (La.1990) (emphasis added).

■ The foregoing formulation of the law by the Louisiana Supreme Court indicates to this Court that Witco's argument

that GSS implied its consent, in accordance with Civil Code articles 1927 and 1942, is unavailing. Since an intent to be so bound must be **expressed** in unequivocal terms, by definition, it cannot be implied. Moreover, Witco's argument that the "expressed intention" requirement means that only the **contract** cannot be implied, and that **consent** to the contract need not be expressed, is unpersuasive.[2] An offeree's intention to be bound is demonstrated through acceptance of an offer. Thus, a contract which requires that the intention to be bound must be expressed in unequivocal terms, requires that acceptance be expressed in unequivocal terms.

Even if this were not true, the cited articles are inapplicable to the present case. Article 1927 provides in pertinent part: "A contract is formed by the consent of the parties established through offer and acceptance. **Unless the law prescribes a certain formality for the intended contract,** offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." (Emphasis added.) In this case, the law does prescribe a certain formality for the intended contract (a contract to indemnify Witco for its own negligence)—it requires that GSS's intention to so bind itself be unequivocally expressed. *Perkins, supra.* That did not occur in this case.

With respect to article 1942, which provides that "[w]hen, because of special circumstances, the offeree's silence leads the offeror reasonably to believe that a contract has been formed, the offer is deemed accepted," the Court finds that the only "special circumstance" present which could possibly provide a basis for Witco to reasonably believe that an indemnity contract had been formed with GSS is the prior course of dealing between the parties. However, as will be discussed more fully below, the Court finds that the course of dealing between these parties was not of

**2.** See March 3, 2000 letter of C. Reisman (Witco's counsel) to the Court.

such a character that Witco should reasonably believe that a contract had been formed.

### The Parties' Prior Course of Dealing is Insufficient to Imply an Indemnity Contract.

Louisiana law recognizes that the terms of a contract may be interpreted with reference to the "course of dealing" between the parties. La. R.S. 10:1–205. The Court first observes that to find that an indemnity agreement was present in the contract between Witco and GSS essentially requires the Court to find that such an agreement was **implied** by the parties' prior course of dealing. Of course, under *Perkins v. Rubicon,* a contract to indemnify the offeror for its own negligence may not be implied, but must be unequivocally expressed, suggesting that the "course of dealing" concept has no place in interpreting contracts which purport to indemnify the offeror for its own negligence. Notwithstanding this however, even if the Court were to disregard the constraints of *Perkins* in applying the "course of dealing" analysis, that would not change the result, since the Court finds (as stated above), that the course of dealing between the parties does not indicate a consent by GSS to indemnify Witco for Witco's negligence.

For Witco to establish by a preponderance of the evidence that there was a "course of dealing" between these parties, which incorporated the indemnity language asserted, Witco must show that the indemnity language in question was forwarded to GSS with enough consistency that GSS knew or should have known that the indemnity language existed and that Witco considered it applicable between the parties. However, a review of the evidence presented indicates the opposite—that despite a professed policy of Witco to fax both sides of its forms (so that GSS

would have received the reverse, containing the indemnity provision), Witco has not come forward with conclusive evidence that this occurred on a regular basis. In fact, it appears from the evidence that varying forms were sent at different times so that even if the reverse was faxed more often than not, on occasions in which it was not sent, GSS could not safely assume what the contents on the reverse would have been.

The evidence submitted shows that prior to the explosion, Witco and GSS had been involved in a variety of business dealings. The parties had executed two specific contracts for specific work, on Witco forms called "Adjusted Hourly Time and Material Contract" on April 11, 1994 [3] and February 8, 1995.[4] These contracts incorporated other Witco standard forms, including its form number 471,[5] entitled "General Conditions of the Contract for Construction." Section 14.6 of that document contained indemnity language which differs from that urged by Witco herein.

Additionally, the parties had executed a "Blanket Order" contract [6] on Witco form number 0222 on October 28, 1994, for work to be performed by GSS for Witco between December 1, 1994 and December 31, 1995. The blanket order form was essentially a contract between the parties that incorporated various other Witco standard forms and included various terms and conditions. Form number 0222 was similar, but not identical, to the purchase order form at issue (number 1246). While the reverse of form 0222 contained the same terms and conditions as form 1246, the front side of form number 0222 differed from the front side of number 1246, in that form 0222 stated on the front that there were terms and conditions on the reverse side of the form that applied between the parties. There was no such language on form 1246.

---

3. Exh. 92.

4. Exh. 93.

5. *Id.* at 14.

6. Exh. 61.

At one point, the parties attempted to execute what was essentially a master service contract, on another Witco standardized form entitled "Environmental Consulting Agreement."[7] However, that form—which contained specific indemnity language different from that on which Witco's present claim is based—was never executed.

The remaining type of work or business dealings between Witco and GSS prior to the explosion consisted of what the parties described as "spot work" vacuum jobs. There were ten such instances over approximately four years preceding the explosion. On those occasions, Witco would request GSS's services by telephone, and the work would be done. At some point, Witco would issue a purchase order, on form number 1246, for the particular job. However, as stated above, how often both sides of the form were faxed remains in issue. While GSS apparently received the reverse of purchase order 360–4004,[8] it has not been conclusively established that the reverse of any others were sent until the purchase order for the December 28, 1996 work was sent, after the explosion. Further, Witco has admitted that both sides were not always sent.[9]

Witco maintains that it has introduced positive evidence that both sides of at least four such purchase orders were sent, by virtue of the fact that Witco employees Pat Palahang and Mike Fernandez testified that it was their procedure to fax both sides, and they were involved in the transmission of four purchase orders (Nos. 820–1055, dated 6/10/92; 820–5692, dated 2/21/95; 820–5156, dated 8/14/95; and 820–567E dated 4/2/96).[10]

However, a review of the deposition testimony of Palahang and Fernandez does not inspire confidence in the Court that both sides were necessarily faxed on these four occasions. To the contrary, Ms. Palahang's testimony reveals that she simply cannot say with certainty how often the reverse sides of the purchase orders were sent. While she stated that her procedure was to send both sides, she acknowledged that she could have made a mistake and failed to send the back on some occasions.[11] At one point, she was even confused about whether her standard practice was to fax the forms or mail them, and ultimately acknowledged that the usual practice was faxing, although that contradicted her testimony in her sworn affidavit.[12] Moreover, she acknowledged that she could not say conclusively that the forms were not faxed front side only on a number of occasions by Andrew Rodgers, a Witco employee who testified he always sent only the fronts.[13] Mr. Fernandez' testimony was almost equally equivocal. He testified that he could not say if it always happens that the reverse is faxed to vendors,[14] and in fact, that he could not say whether he himself had faxed both sides on the occasions that he had faxed purchase order forms.[15] Because the practice requires the Witco employee sending the purchase order to photocopy both sides of one part of a triplicate form, then fax both sides of the photocopy, Fernandez testified that he did not know if the entire procedure was always done.[16]

While it is true that GSS apparently did receive the reverse side of the blanket order form, which contained identical indemnity language, the Court notes first that the blanket order form relates to oth-

---

7. Exh. 94.

8. Exh. 61.

9. Rodgers depo., 75; Goletz depo., 19.

10. Exhs. 59, 62, 63, and 67.

11. Palahang depo., 35; 69

12. *Id.* at 74–75; Exh. 82.

13. Rodgers depo., 75.

14. Fernandez depo., 28.

15. *Id.* at 50.

16. *Id.* at 63.

er work by GSS for Witco, and its terms expired in December 1995. Further, the blanket order form differed in a critical aspect from the purchase order forms, in that it alerted the offeree to the presence of additional provisions on the back to which it was bound by signing the form.

Thus, while Witco argues that it has brought forth positive evidence in the form of witnesses who can testify that the procedure was to fax both sides, the evidence brought forward establishes with certainty that only on three occasions was the indemnity language Witco seeks to enforce definitely sent and received by GSS. Of these, one was the blanket order form, which expired in December 1995, a year before the explosion; another was the purchase order sent a week after the explosion. On this record, the Court finds that Witco has simply not established that the indemnity language was sent with such regularity that it was incorporated into the contract between the parties by their course of dealing. To the contrary, it appears that such varying versions of indemnity language were provided that GSS would not be safe in assuming anything based on the parties' prior dealing, a point brought home by Witco's corporate representative, Michael Fernandez. Fernandez acknowledged that if Witco made changes to the terms contained on its forms, Witco would not necessarily notify vendors of the changes, but instead stated that he simply gives the forms to them, and "[h]opefully they read what they get"; that the vendors would only know of the change "[b]y reading it;" that he personally "would read it each and every time," because he "deal[s] with multiple companies and everybody's is different every time."[17] The clear import of Fernandez' comments is that GSS would be foolish to imply anything based on the parties' prior dealings, a point of which the Court agrees and which the evidence bears out.

As for Witco's argument that GSS has put forward only "negative" evidence (that GSS does not have both sides of the forms in its files)—such an argument overlooks the fact that as the third-party plaintiff seeking to enforce the indemnity agreement, Witco bears the burden of proof here. GSS need not prove that it never, or rarely, received the complete forms; rather, Witco must prove that it always, or at least very consistently, sent the complete forms. Witco has failed to meet its burden, and therefore the purported indemnity agreement is ineffective and unenforceable.

### There Was No Meeting of the Minds on the Indemnity Provision.

Finally, Witco has suggested that because following the explosion in question, Witco sent the reverse side of form 1246, and GSS subsequently invoiced and accepted payment from Witco for the work, GSS acquiesced to the terms and conditions containing the indemnity agreement. In point of fact, Steve Ursin, who was in charge of all contracts for GSS, stated that he refused to sign the purchase order because of the indemnity language contained on the reverse.[18] Further, it is his testimony that he had never seen the reverse side of the purchase order form prior to receipt of purchase order number 820–5477, after the explosion. On these facts, it simply cannot be said that there was a meeting of the minds on the indemnity agreement, even if GSS did invoice Witco for the work which it had completed. Therefore, the indemnity provision is without effect.

Accordingly;

**IT IS ORDERED** that third-party plaintiff Witco's complaint against GSS should be and is hereby **DISMISSED**.

---

17.  *Id.* at 106–08.

18.  Ursin depo., 89.