United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 10, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-31014

_____

AMERICAN HOME ASSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PENNSYLVANIA

Plaintiffs-Appellants

versus

CHEVRON, USA, INC., and HALLIBURTON ENERGY SERVICES, INC.

Defendants-Appellees

_____

Appeal from the United States District Court for

the Eastern District of Louisiana

_____

Before REAVLEY, JONES and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The issue is whether an oil company may call upon the courts
to enforce an indemnity clause requiring its oilfield service
contractor to indemnify the oil company against its own negligence
without affording the contractor an opportunity to show that the
indemnity clause is invalid under the Louisiana Oilfield Anti-
Indemnity Act (LOAIA).  The LOAIA prohibits the enforcement of such
provisions in cases in which the oil company's negligence or fault
(strict liability) has contributed to the third party's injury or

1

death.

In this case, the district court rendered summary judgment dismissing suit by the service contractor's insurer (AIG) for reimbursement of sums expended in settling an oilfield worker's claim against the oil companies (Chevron and Halliburton) despite a genuine dispute as to the material issue of whether the companies' negligence or fault contributed causally to the worker's injury. We reverse. When an oilfield contractor reasonably settles such a claim against its oil company principal in the face of an indemnity clause requiring it to defend and indemnify the oil company against all claims incident to the contractor's work, the contractor is entitled to seek reimbursement for the reasonable settlement by showing that the indemnity contract was void as to that claim under the LOAIA due to the oil company's fault or negligence.

### Background

On June 29, 2000, James Blackmon, an employee of M-I L.L.C (M-I), brought a Jones Act suit against M-I, Chevron U.S.A., and Halliburton Energy Services (oil companies) seeking compensation for injuries he suffered on the Chevron Genesis Spar while working with Halliburton employees. Chevron requested defense and indemnity from M-I in accordance with a Master Service Agreement (MSA). Halliburton, pursuant to a Mutual Indemnity and Waiver Recourse Agreement (MIA), also requested defense and indemnity from M-I. M-I agreed to assume the defense of the oil companies.

2

After Blackmon filed his suit, which alleged causes of action arising under the Jones Act, it was determined that the Genesis Spar, on which Blackmon was injured, was a work platform rather than a vessel. Thus, pursuant to the Outer Continental Land Shelf Act, the law of Louisiana applied and Blackmon's remedies against M-I were limited to worker's compensation. M-I was dismissed as a defendant and subsequently joined the suit as a plaintiff-in-intervention seeking to recover worker's compensation benefits paid to Blackmon.

M-I gave notice of Blackmon's claims to its primary and excess liability insurer, American Home Assurance and National Fire Insurance Company of Pittsburgh, Pennsylvania (collectively: AIG). AIG did not agree that M-I owed defense and indemnity to the defendants. M-I and AIG subsequently reached a settlement, pursuant to which AIG agreed to negotiate and fully fund a settlement in the Blackmon case or, in the alternative, to pay any judgment rendered against the oil companies, in exchange for M-I assigning to AIG its right to seek reimbursement of the cost of defense and indemnity from the oil companies.

Thereafter, AIG sent a letter to the oil companies explaining its position that the defense and indemnity provisions of both the MSA and MIA were unenforceable under Louisiana law. AIG further claimed that since M-I's contractual obligations to defend and indemnify the oil companies were void and unenforceable, M-I's

3

acceptances of the duty to defend and indemnify the oil companies were without effect. Finally, AIG informed the oil companies that it intended to pursue a settlement with Blackmon and, also, intended to pursue recovery from the oil companies for any amounts paid. AIG requested that the oil companies either stipulate to the reasonableness of any settlement with Blackmon or, in the alternative, accept the re-tender of their defense and liability. The oil companies declined to either undertake their own defense or to participate in the settlement. Thereafter, AIG settled Blackmon's claims against the oil companies for two million dollars.

In February 2002, AIG filed a complaint against the oil companies seeking recovery of the amount paid in settlement plus all attorneys' fees and costs incurred in defending against Blackmon's claims. AIG subsequently filed a motion for summary judgment arguing that, pursuant to the Louisiana Oilfield Anti-Indemnity Act (LOAIA), La. Rev. Stat. § 9:2780, the defense and indemnity provisions of the contracts between M-I and the oil companies were void and unenforceable. AIG further argued that since the LOAIA renders the defense and indemnity provisions unenforceable, neither M-I nor its insurers were obliged to defend or indemnify the oil companies and that any agreement by M-I to assume such a defense was without effect. Thus, AIG claimed that it was entitled, as a matter of law, to recover all sums expended in settling Blackmon's claims.

The oil companies also moved for summary judgment. They argued

4

that the LOAIA only renders defense and indemnity provisions unenforceable where the indemnitee is found to be wholly or concurrently at fault.   Thus, according to the oil companies, because there had been no judicial determination of fault in the Blackmon litigation, the LOAIA did not apply and the contractual provisions requiring M-I to provide defense and indemnification to the defendants were valid and enforceable.

The district court granted the oil companies' motion and denied AIG's motion, concluding that the indemnification clauses were not void under the LOAIA.   The district court did not, however, make any factual findings regarding the negligence or fault of the oil companies. Rather, the district court determined that the LOAIA only applies when an indemnitee has been adjudicated at fault, that AIG prevented any adjudication of fault by settling with Blackmon and that, therefore, the LOAIA did not apply. AIG timely appealed.

I.

We review a district court's decision to grant or deny summary judgment de novo, applying the same legal standards as the district court.[1] Summary judgment is proper if, when viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is "no genuine issue of material fact and that

---

[1] *See Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004); *Melton v. Teachers Ins. & Annuity Ass'n of America*, 114 F.3d 557, 559 (5th Cir. 1997).

5

the moving party is entitled to judgment as a matter of law."[2]

                                    II.

The central issue in this case is whether, with respect to the injured worker's claims, the oil companies were wholly or concurrently at fault, so that the LOAIA renders void and unenforceable the defense and indemnity clauses in the contracts between M-I and the oil companies.  The LOAIA states, in relevant part, that "[a]ny provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals . . . is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee . . . ."[3]  Thus, the LOAIA, by its express terms, "only prohibits indemnity for cost of defense where there is negligence or fault (strict liability) on the part of the indemnitee."[4]

The Louisiana Supreme Court, in response to questions certified by this court, has plainly stated that "the indemnitor's obligation

_____

[2] Fed. R. Civ. P. 56(c).

[3] La. Rev. Stat. § 9:2780.

[4] *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987) quoting La. Rev. Stat. § 9:2780.

for cost of defense cannot be determined until there has been a judicial finding that the indemnitee is liable or that the charges against it were baseless."[5]  In other words, "[w]hether an oil company (indemnitee) is free from fault and thus outside the scope of the Act can only be determined after trial on the merits."[6]  In the present case, the district court rendered summary judgment for the oil companies without determining that there was no genuine dispute as to any material fact issue regarding the oil companies' negligence or fault relevant to this case.[7]  Thus, the district court's granting of summary judgment to the defendants was premature.

The clear intent of the LOAIA is to protect oilfield contractors and their employees from adhesionary contracts requiring contractors to indemnify oil companies for their negligence or fault.  The Louisiana legislature stated, in the very text of the statute, that "an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions . . . contained in some agreements pertaining to wells for oil, gas, or water . . . ."[8]  Because of this inequity, the legislature sought,

---

[5] *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987).

[6] *Id.*

[7] *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)(summary judgment movant must establish the absence of any genuine issue of material fact.)

[8] La. Rev. Stat. § 9:2780(A) (Emphasis added).

7

by enacting the LOAIA, "to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee."[9] Thus, the LOAIA "arose out of a concern about the unequal bargaining power of oil companies and contractors and was an attempt to avoid adhesionary contracts under which contractors would have no choice but to agree to indemnify the oil company, lest they risk losing the contract."[10] The "purpose of the legislature, and thus the policy interest of the state, is to protect certain contractors, namely those in oilfields, from being forced through indemnity provisions to bear the risk of their principal's negligence . . . ."[11]

The LOAIA was also enacted to protect oilfield workers.[12]  As this court has stated:

"It is universally known that the exploration for oil, gas and other minerals is extremely hazardous. Any action which might have a substantial effect on safety in that setting finds an instant audience. So it is with the Oilfield Indemnity Act of 1981. It

---

[9] *Id.*

[10] *Fotenot v. Chevron*, 676 So. 2d 557, 563 (La. 1996).

[11] *Rodriques v. Legros*, 563 So. 2d 248, 254 (La. 1990).

[12] La. Rev. Stat. § 9:2780(A).

8

prevents one from requiring another to indemnify one's own negligence or fault. If a person is permitted to insulate himself from his own negligence, the motivation to institute and enforce safe work practices and conditions is at best attenuated. One who remains liable and exposed for his own negligence is more likely to act with care. This Act is a rational attempt to improve oilfield safety."[13]

The district court's rendering of a summary judgment for the defendants in the present case, despite a genuine dispute between the parties as to the oil companies' negligence or fault causally linked to the worker's injuries, undermines both purposes of the LOAIA. The oil companies have, in essence, made an end run around the LOAIA by tendering their defense to the contractor when it was still uncertain whether the law of Louisiana would apply to the injured worker's claims, and then refusing to participate in the settlement of those claims, or to accept the re-tender of their own defense, after it became known that Louisiana law would be applied. For the LOAIA to have the protection legislatively intended the contractor must be afforded an opportunity to demonstrate that the indemnity agreements invoked by the oil companies to defeat the contractor's reimbursement claim are void under the Act because of the negligence or fault of the oil companies.

---

[13] *Knapp v. Chevron USA, Inc.*, 781 F.2d 1123, 1130 (5th Cir. 1986).

Our decision in *Tanksley v. Gulf Oil Corp.*[14] does not require a different result. In *Tanksley*, this court held that an oil company cannot invoke an indemnification agreement with a contractor after settling an injured worker's claims because, by settling, the oil company foreclosed its opportunity to have a court determine that it was free from fault.[15] The *Tanksley* holding furthers the aims of the LOAIA by protecting contractors from having to litigate an oil company's fault when the oil company had an opportunity to adjudicate the matter in the previous underlying action.

---

[14] 848 F.2d 515 (1988).

[15] The two intermediate Louisiana appellate courts that have considered the issue have both rejected the conclusion in *Tanksley* that an indemnitee's settlement of a case precludes a subsequent determination of fault. *See Riddings v. Danos & Curole Marine Contractors, Inc.*, 723 So.2d 979, 983 n.4 (La. App. 4 Cir. 1998)("Whether the indemnitee was negligent or at fault (strict liability) in causing injury to the original plaintiff can be determined at trial between the indemnitee and the indemnitor even after the indemnitee has settled with the original plaintiff"); *Phillips Petroleum Company v. Liberty Servs.*, 657 So. 2d 405, 409 (La. App. 3 Cir. 1995) (holding that the LOAIA does not prevent one seeking indemnification from proving freedom from fault in an action separate from the original action, even where, for whatever reason, the original action is dismissed.) The Louisiana Supreme Court has not ruled on the matter. Because we find that *Tanksley* is distinguishable from and inapplicable to the present case, we need not determine the effect, if any, of the outright rejection of *Tanksley* by two of the five Louisiana appellate courts. *See FDIC v. Abraham*, 137 F.3d 264, 269 (5th Cir. 1998) ("[W]e should not disregard our own prior precedent on the basis of subsequent intermediate state appellate court precedent unless such precedent comprises unanimous or near-unanimous holdings from several-preferably a majority-of the intermediate appellate courts of the state in question.")

10

Furthermore, because the indemnification provision at issue in *Tanksley* was declared null and void, there was no risk that the oil company could shift liability for its own negligence to the contractor. Thus, *Tanksley* is consistent with the object of the LOAIA whereas summary judgment in favor of the oil companies in the present case neither protects contractors against adhesionary contracts nor fosters oilfield safety. Accordingly, *Tanksley* can not be extended or applied to bar the litigation of the oil companies fault and the contractor's right to reimbursement following the contractor's settlement of an oilfield worker's claims against an oil company.

We do not agree with AIG's argument, however, that the oil companies' tender of their defense to M-I prohibits them from disputing the matter of their fault. AIG appears to argue that: (1)the LOAIA prohibits indemnitees from requesting an up-front defense, (2) an indemnitor's acceptance of an indemnitee's defense is an absolute nullity under Louisiana law,[16] and (3) the parties should therefore be returned to their previous positions.

In *Meloy*, the Louisiana Supreme Court noted that "[p]rior to a judicial determination, it is not known whether the indemnitee is

---

[16] Article 5 of the Louisiana Civil Code states: "Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity."

or is not at fault; therefore, the [LOAIA] would prohibit a provision requiring an 'up-front' defense."[17] Thus, under *Meloy*, an indemnitee apparently cannot bind a contractor-indemnitor to provide a defense to its oil company-principal before an adjudication on the merits. Therefore, according to AIG, because contractors lack bargaining power vis-a-vis oil companies, a *request* that the contractor provide a defense is indistinguishable from a contractual *requirement* that the contractor provide an up-front defense. Accordingly, AIG contends, under *Meloy*, the LOAIA bars indemnitees from even requesting that an indemnitor provide a defense. We disagree.

Although we are mindful of the concerns that led the Louisiana legislature to enact the LOAIA, we do not think that the Louisiana courts would read the statute as prohibiting an indemnitor-contractor from voluntarily accepting an indemnitee's request for a defense prior to an adjudication on the merits. The LOAIA only prohibits certain fault shifting defense and indemnity contract provisions; other provisions not prohibited remain enforceable. Specifically, "[t]he [LOAIA] does not apply where the indemnitee is not negligent or at fault."[18] Thus, where it appears that an employee's suit against an indemnitee is meritless, and therefore

---

[17] *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 n.11.

[18] *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987).

outside the scope of the LOAIA, an indemnitor-contractor may choose to accept the indemnitee's defense in order to control costs for which it possibly may be liable. We see no reason to conclude that the LOAIA would prohibit an indemnitor-contractor from protecting its own interests by accepting a tender of defense in those circumstances.[19] Because the LOAIA does not prohibit an indemnitee from requesting an up-front defense, nor an indemnitor from agreeing to provide a defense, M-I's agreement to defend Chevron and Halliburton against Blackmon's claims is effective unless and until a court determines that the defendants were solely or concurrently at fault and, therefore, that the LOAIA applies.

Finally, despite the defendants' claims to the contrary, AIG's suit is not barred by res judicata, or claim preclusion.[20] Under

---

[19] *See*, *e.g.*, 42 Corpus Juris Secundum Indemnity § 59("An indemnitor notified of suit against the indemnitee and requested to defend has the right to conduct the defense.")

[20] The parties disagree about whether this court should apply federal or state law to determine the preclusive effect of the Blackmon settlement and the judgment of dismissal by the district court. Prior to the Supreme Court's decision in *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) this circuit applied federal law to determine the preclusive effect of a prior judgment by a district court sitting in diversity. *See e.g. Mowbray v. Cameron County*, 274 F.3d 269, 281 (5th Cir. 2001). In *Semtek*, however, the Supreme Court held that while federal law ultimately determines whether a federal judgment precludes a subsequent action or argument, when the basis of the original court's jurisdiction is diversity of citizenship, federal courts should apply the law of the forum state unless the state law is incompatible with federal interests. *Semtek*, supra, 531 U.S. at 508. Because we reach the same outcome regardless of whether Louisiana or federal law applies, we need not decide,

13

Louisiana law, "a cause of action for indemnification for cost of defense does not arise until the [original] lawsuit is concluded and defense costs paid."[21] Thus, the present cause of action did not exist until after the injured worker's claims were settled. The doctrine of res judicata does not bar a party from bringing a claim that arose subsequent to a prior judgment involving the same parties.[22] Accordingly, the claim is not precluded by the settlement and dismissal of those claims.

We further note that the litigation of the defendants' fault

---

in the present case, whether the Louisiana res judicata statute, La. Rev. Stat. § 13:4231, is incompatible with any federal interest.

[21] *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839*; See also Pike v. Freeman*, 266 F.3d 78, 91-2 (2d Cir. 2001); Am. Jur. 2d Indemnity § 43.

[22] *See, e.g., Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 328 (1955) (prior judgment did not preclude subsequent suit on cause of action arising after entry of the original judgment); *Chapman v. Goodnow's Adm'r*, 123 U.S. 540, 548 (1887 (judicial "decree is a bar to the cause of action upon which it was based, but not to a different cause of action arising afterwards"); *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, Louisiana, Inc.*, 37 F.3d 193, 196 (5th Cir. 1994)(prior judgment did not bar action for liability under that judgment even though defendant in second action had been defendant in first action); *Pike v. Freeman*, 266 F.3d 78, 91-2 (2d Cir. 2001)(arbitration award did not bar action for indemnification for the award, second action did not arise until the arbitration concluded and the award was paid);46 Am Jur Judgments § 532 ("Obviously, if the cause of action in the second action arises after the rendition of the judgment in the first action, it is a different cause of action not barred by the prior judgment"). *See also* La. Rev. Stat. § 13:4231 (prior judgment is conclusive between the same parties "to all causes of action *existing at the time of the final judgment*." (emphasis added))

14

for Blackmon's injuries is not barred by the doctrine of collateral estoppel. Under federal law, "the doctrine of collateral estoppel has three requirements: (1) the prior federal decision resulted in a judgment on the merits; (2) the same fact issue must have been *actually litigated in the federal court*; and (3) the disposition of that issue must have been necessary to the outcome of the prior federal litigation."[23]  Louisiana law also limits the doctrine of collateral estoppel to issues actually litigated in a prior preceding.[24]  Because Blackmon's claims were settled, and the settlement agreement did not indicate that the judgment of dismissal should be considered conclusive on the matter of fault, the issue was never actually litigated.[25]  Thus, there is no legal bar to the litigation of the defendants' fault in this indemnification action.

For these reasons, we reverse the summary judgment in favor of

---

[23] *Dahiya v. Talmidge Int'l, Ltd*., 371 F.3d 207, 213 (5th Cir. 2004).

[24] La. Rev. Stat. § 13:4231 ("A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined . . . .")

[25] *See Hughes v. Santa Fe Int'l Corp*., 847 F.2d 239, 241 (5th Cir. 1988) (consent judgments ordinarily do not give rise to collateral estoppel because no issues are actually litigated, consent judgments are only given preclusive effect if the parties manifest such an intention); Restatement of Judgments (Second) § 27(e)(same).

15

the defendants and remand the case to the district court for further proceedings consistent with this opinion.