IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 5, 2008

Charles R. Fulbruge III
Clerk

No. 07-30617

THOMAS BOUCHER

Plaintiff - Appellant

v.

GRAPHIC PACKAGING INTERNATIONAL INC

Defendant - Third Party Plaintiff -
Appellee - Appellant

v.

HYDROVAC SERVICES INC; ZURICH AMERICAN INSURANCE CO

Third Party Defendants - Appellees

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 3:05-CV-37

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Thomas Boucher, an employee of Hydrovac Services, Inc. ("Hydrovac"), was seriously injured while cleaning a tank at a Graphic Packaging International ("GPI") plant. Boucher sued GPI, alleging negligence and strict liability. GPI filed third-party complaints against Hydrovac and Zurich American Insurance ("Zurich"), Hydrovac's insurer. The district court held that (1) GPI and Hydrovac did not have a valid indemnity agreement at the time of the accident and (2) Zurich did not have a duty to defend GPI because GPI was immune from Boucher's suit under Louisiana worker's compensation law. For the reasons stated below, we reverse in part, affirm in part and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

On October 17, 2004, Hydrovac began cleaning equipment at GPI's West Monroe plant. Boucher fell over forty feet while cleaning a tank on October 19, 2004 and was seriously injured.

The GPI purchase order for the October 17, 2004 job was not issued until October 21, 2004. Although GPI had contracted with Hydrovac regularly since 1999, there was no master agreement between GPI and Hydrovac at the time of Boucher's injury. Each job Hydrovac completed for GPI was conducted under the terms of a separate purchase order issued by GPI. Frequently, the purchase orders would not be issued until Hydrovac had already completed a job.

The October 21, 2004 purchase order contained an indemnification provision which stated that Hydrovac would indemnify GPI for any injuries caused by its employees on the job, except for those injuries caused by GPI's sole negligence. The purchase order also stated that GPI was the statutory employer of Hydrovac's employees under Louisiana worker's compensation law.

Boucher filed suit against GPI in state court on December 1, 2004. GPI removed the case to federal court on January 3, 2005 on diversity grounds. On November 7, 2005, GPI filed a third-party complaint with leave of the court

against Hydrovac. On February 15, 2006, GPI filed a third-party complaint with leave of the court against Zurich. All of the parties filed motions for summary judgment. The district court granted GPI's motion for summary judgment against Boucher and held that GPI was Boucher's statutory employer at the time of the accident. The district court granted Hydrovac's and Zurich's motions for summary judgment against GPI and held that Hydrovac and Zurich did not have an obligation to indemnify or defend GPI. Boucher and GPI appeal.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. Sudo Props., Inc. v. Terrebonne Parish Consol. Gov't, 503 F.3d 371, 376 (5th Cir. 2007). Louisiana worker's compensation law must be construed liberally in favor of the worker, Landreneau v. Liberty Mut. Ins. Co., 309 So. 2d 283, 284 (La. 1975), but it is still subject to the rule that a law that is "clear and unambiguous . . . shall be applied as written . . . ." LA. CIV. CODE ANN. art. 9; Adams v. Cajun Disposal, Inc., 691 So. 2d 296, 299 (La. App. 1st Cir. 1997).

Under the Louisiana Civil Code, "[t]he words of a contract must be given their generally prevailing meaning." LA. CIV. CODE ANN. art. 2047. "A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed . . . ." Perkins v. Rubicon, Inc., 563 So. 2d 258, 259 (La. 1990).

## III. DISCUSSION

We reverse the district court's finding that GPI was Boucher's statutory employer at the time of his accident. Louisiana law requires that the statutory employer be designated by written agreement, and there was no written agreement between GPI and Hydrovac on the date the accident occurred. We affirm the district court's finding that there was no indemnity contract between Hydrovac and GPI at the time of the accident because there was no written agreement between them, and Louisiana law does not permit us to infer the

existence of a contract of indemnity from the parties' course of dealing; and, we also hold that Zurich has no indemnity obligation under its policy. We affirm the district court's finding that Zurich has no duty to defend GPI against Boucher's suit, but on different grounds than those relied on by the district court; and, we also hold that neither does Hydrovac owe a duty to defend GPI.

A.    GPI is not Boucher's statutory employer

GPI claims that it is immune from Boucher's tort claims under the exclusive remedy provisions of Louisiana worker's compensation law. See LA. REV. STAT. ANN. § 23:1032.  GPI claims that at the time of the accident, it was Boucher's "statutory employer" under section 23:1061(A) of the Louisiana Revised Statutes.

GPI's claim fails because there was no written contract between GPI and Hydrovac when Boucher fell on October 19, 2004.  Section 23:1061(A)(3) provides that "a statutory employer relationship shall not exist between the principal and the contractor's employees . . . unless there is a written contract between the principal and a contractor which is the employee's immediate employer . . . which recognizes the principal as a statutory employer."  Under Louisiana law, GPI was the "principal" and Hydrovac was the "contractor" at the time of Boucher's fall. LA. REV. STAT. ANN. § 23:1061(A)(1).

The purchase order for the job Hydrovac began on October 17, 2004 included a provision designating GPI as the statutory employer.  However, the purchase order was not issued until October 21, 2004, two days after Boucher's October 19, 2004 accident.  At the time of Boucher's accident, there was no written contract between GPI and Hydrovac.

GPI argues that the October 21, 2004 purchase order was in effect at the time of Boucher's accident because the purchase order stated that performance constituted acceptance.  The record does not support this argument.  While Hydrovac's decision to begin work on October 17, 2004 is evidence that some

kind of agreement existed between Hydrovac and GPI on that date, the only written agreement in the record regarding the October 17, 2004 job is the purchase order. The purchase order was not issued by GPI until October 21, 2004 and therefore could not be accepted by Hydrovac until that date at the earliest. Because section 23:1061(A)(3) requires a written contract to create statutory employer status, we hold that GPI was not Boucher's statutory employer at the time of the accident. See Ernest v. Petroleum Serv. Corp., 868 So. 2d 96, 99 (La. Ct. App. 2003).

B.   Hydrovac and Zurich have no obligation to indemnify GPI

GPI also argues that the October 21, 2004 purchase order obliges Hydrovac to indemnify it for Boucher's injury. The third page of the purchase order states: "Seller shall indemnify . . . Buyer . . . against any and all . . . claims . . . arising out of the performance of any services by . . . Seller for Buyer resulting in injuries to . . . any person . . . occasioned by acts or omissions of Seller . . . whether or not negligent, except when due to the sole negligence of Buyer." GPI argues that the October 21, 2004 written contract was unequivocally accepted by Hydrovac when it started work on October 17, 2004. We reject this argument because, as discussed above, the written contract did not come into existence until October 21, 2004 and could not have been accepted before that date.

GPI also argues that its relationship with Hydrovac was governed by an oral agreement reached in 1999 between Jeff Touzet of GPI and Jeff Noe of Hydrovac, under which Hydrovac agreed that all work done for GPI would be governed by the terms of the standard purchase order form, which included an indemnification clause. GPI points to the existence of a 2003 certificate of insurance from Zurich to corroborate this claim. GPI also notes that all of its prior dealings with Hydrovac have been governed by the same purchase order and that Hydrovac has never objected to the indemnification clause. Hydrovac

argues that GPI, which has the burden to establish the existence of the oral contract, failed to do so. Hydrovac notes that GPI's corporate representative admitted that there was no master agreement in place between GPI and Hydrovac in 2004, and that if they did not have a master agreement in place, then the terms and conditions of their purchase order would not apply to work that was done prior to the issuance of the purchase order. Hydrovac further argues that Louisiana law does not permit this Court to imply the existence of an indemnity contract from the parties' course of dealing.

The district court granted summary judgment in favor of Hydrovac and found that indemnity contracts cannot be implied from the parties' course of dealing under Louisiana law. The district court also found that GPI failed to establish the existence of an oral contract of indemnity, in part because Touzet could not remember crucial details of the 1999 meeting, and Noe, who could have confirmed or disputed the agreement, had passed away.

The district court cited Freeman v. Witco Corp. for the proposition that a contract of indemnity cannot be implied from the parties' course of dealing or commencement of performance. 108 F. Supp. 2d 643, 646 (E.D. La. 2000). Freeman involved an employee who was injured in an explosion while working for a contractor at the principal's plant. Id. at 644. About a week after the explosion, the principal sent the contractor the purchase order, which included an indemnification clause. Id. at 644–45. The contractor refused to indemnify the principal and the principal filed suit, claiming that the contractor implied its consent to the purchase order by beginning performance, and that the contractor's consent to indemnify was implied by the parties' course of dealing. Id. at 645. The district court found that, under Louisiana law, contracts of indemnity are strictly construed and that a "contract to indemnify the offeror for its own negligence may not be implied, but must be unequivocally expressed" and that therefore, "the 'course of dealing' concept has no place in interpreting

contracts which purport to indemnify the offeror for its own negligence." Id. at 646. The Freeman court also found, in the alternative, that the parties' prior course of dealing did not indicate a consent by the contractor to indemnify the principal for the principal's own negligence because although the parties regularly contracted together using a standard purchase order form, the page including the indemnification clause was not always faxed to the contractor with the rest of the form. Id. at 647.

Freeman relied on Perkins v. Rubicon, Inc., 563 So. 2d 258, 259 (La. 1990). Id. at 645. Perkins states that a "contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms." 563 So. 2d at 259. In an earlier case discussing indemnity contracts, the Louisiana Supreme Court stated that this presumption against indemnification only applies when "a contractual provision to indemnify against the indemnitee's negligence liability is still in doubt after a careful reading of the contract as a whole." Sovereign Ins. Co. v. Texas Pipe Line Co., 488 So. 2d 982, 985 (La. 1986). The court held, however, that "[w]hen there is doubt as to indemnification against an indemnitee's own negligence liability[,] . . . usage, custom or equity may not be used to interpret a contract expansively in favor of the indemnitee."[1] Id. The court went on to provide the rationale for this rule:

---

[1] Article 2055 of the Louisiana Civil Code defines equity and usage as follows:

Equity . . . is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.

Usage . . . is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation.

> [This presumption] is derived from the principles of equity. To impose on a person an obligation to indemnify another against the indemnitee's own negligence without the obligor's unambiguous consent is contrary to the principles of equity. Because of the obligor's lack of ability to evaluate, predict, or control the risk which may be created by the indemnitee's future conduct, enforcement of such a provision without clear evidence that the risk was bargained for and accepted may allow one to take unfair advantage of another and unjustly enrich himself at the other's expense. Moreover, such an injustice may encourage antisocial acts and a relaxation of vigilance toward the rights of others by relieving the wrongdoer of liability for his conduct.

Id. at 986 (internal citations omitted).

Neither Perkins nor Sovereign Insurance directly address the question here, because they both involved the interpretation of existing indemnity contracts. We have to determine whether we may imply the existence of an indemnity contract from the parties' course of dealing. Accordingly, we must make an Erie guess as to how the Louisiana Supreme Court would answer this question.

Sovereign Insurance forbids us to rely on "usage, custom or equity" when interpreting a doubtful indemnity contract, but it does not mention whether it is proper to look to the parties' course of dealing. However, Article 2053 of the Louisiana Civil Code defines usage, equity and "the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties," which is closely analogous to "course of dealing," as rules used to interpret doubtful contract provisions. Although the concepts of usage, custom and equity are distinct from the parties' course of dealing, we do not regard them as different enough to change the analysis in Sovereign Insurance. We hold that under the logic of Sovereign Insurance, the Louisiana Supreme Court would extend the presumption against indemnification to situations where a party is attempting to establish the existence of an indemnity contract through the parties' course of dealing. If Louisiana law does not permit

courts to rely on usage to expand the scope of an indemnity contract where there is doubt as to its coverage, then a fortiori we may not rely on the parties' course of dealing to establish the existence of an indemnity contract in the first instance.

We affirm the district court's finding that there was no contract of indemnity between GPI and Hydrovac at the time of Boucher's accident. GPI's corporate representative admitted that there was no master agreement between GPI and Hydrovac at the time of the accident. Under these circumstances, there is clearly doubt as to whether an indemnity contract was included in the agreement to start work on October 17, 2004. Applying our Erie-derived rule against relying on usage to establish indemnity contracts, we hold that there was no indemnity contract between GPI and Hydrovac when Boucher's accident occurred.

Furthermore, we hold that Zurich does not have an obligation to indemnify GPI in the underlying lawsuit according to its policy. Despite GPI's insistence that it qualifies as an additional insured under the liability policy Zurich issued to Hydrovac, the unambiguous language of the Additional Insured Endorsement requires a written contract or agreement between Hydrovac and GPI. Here, though, as we have already discussed, there was no such contract or agreement in place at the time the accident occurred. GPI and Hydrovac had not yet entered into a master agreement, and the purchase order covering Hydrovac's work in question was not issued until October 21, 2004. Accordingly, there was no written contract providing GPI with additional-insured status. Under these circumstances, Zurich does not have a duty to indemnify GPI.

C.    Hydrovac and Zurich have no duty to defend GPI

We also hold that Hydrovac does not owe GPI a duty to defend it in the present lawsuit. This dispute involves an alleged indemnification contract. Under Louisiana law,

> [a]n indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy. A cause of action under a liability insurance policy accrues when the liability attaches. However, an insurer's duty to defend arises whenever the pleadings against the insured disclose a possibility of liability under the policy. On the other hand, an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss. Therefore, a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid. The allegations of the complaint against the indemnitee are irrelevant to the indemnitor's obligation to pay. Rather, it is the terms of the indemnity agreement which govern the obligations of the parties.

Meloy v. Conoco, Inc., 504 So. 2d 833, 839 (La. 1987) (internal citations and footnote omitted); see also Am. Home Assurance Co. v. Chevron, USA, Inc., 400 F.3d 265, 271–72 (5th Cir. 2005) ("Under Louisiana law, a cause of action for indemnification for cost of defense does not arise until the [original] lawsuit is concluded and defense costs paid." (internal quotations omitted)). Because there is no valid contract of indemnity between Hydrovac and GPI, there can be no obligation for Hydrovac to indemnify GPI for the cost of defending itself against Boucher's lawsuit.

Furthermore, we hold that Zurich does not owe a duty to defend GPI in the underlying lawsuit according to its policy for the reasons described above for indemnity.

## IV. CONCLUSION

We REVERSE the district court's judgment that GPI was Boucher's statutory employer at the time of Boucher's accident. We AFFIRM the district court's judgment that there was no indemnity contract between GPI and Hydrovac at the time of Boucher's accident; and, we also hold that Zurich has no indemnity obligation under its policy. We AFFIRM the district court's judgment that Zurich does not owe a duty to defend GPI against Boucher's suit; and, we

also hold that neither does Hydrovac owe such a duty to GPI. We REMAND this case for further proceedings consistent with this opinion.