# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 12, 2023

Lyle W. Cayce
Clerk

No. 21-40648

National Oilwell Varco, L.P.,

*Plaintiff—Appellee/Cross-Appellant*,

*versus*

Auto-Dril, Incorporated,

*Defendant—Appellant/Cross-Appellee*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:15-CV-27

Before Richman, *Chief Judge*, and King and Higginson, *Circuit Judges*.

King, *Circuit Judge*:

This dispute began with a patent infringement suit in 2009. In 2011, the parties settled, but discord over that settlement re-emerged in later litigation. Now, the parties appeal various holdings that both preceded and followed a trial regarding their 2011 Settlement Agreement. We hold that we lack jurisdiction over Auto-Dril's counterclaim for being fraudulently induced into entering the Settlement Agreement. For the remaining issues, we REVERSE the rulings of the district court and REMAND for further proceedings consistent with this opinion.

No. 21-40648

## I.

In 2004, Varco, L.P. ("Varco"), an oil and gas drilling company, purchased the assets of another drilling company, including U.S. Patent No. 5,474,142 (the "'142 Patent"). The '142 Patent covers technology that automatically controls a drill bit to be used in oil and natural gas extraction based on drilling fluid pressure. In March 2005, following the asset sale, Varco's parent company, Varco International, Inc., and a competitor, National Oilwell, Inc., completed a merger to form National Oilwell Varco, Inc. It was understood that Varco, as Varco International, Inc.'s operating company, would transfer its assets to the newly formed entity's operating company: Plaintiff-Appellee/Cross-Appellant National Oilwell Varco, L.P. ("NOV").

In 2009, NOV filed an action in the United States District Court for the Eastern District of Texas alleging that Defendant-Appellant/Cross-Appellee Auto-Dril, Inc. ("Auto-Dril") infringed the '142 Patent (the "Underlying Action"). In November 2011, Auto-Dril and NOV entered into a confidential settlement agreement that was intended to end their litigation over the '142 Patent (the "Settlement Agreement"). Under the terms of the Settlement Agreement: (1) Auto-Dril was granted a license to the '142 Patent in exchange for a licensing fee of $900,000 to be paid in sixteen quarterly installments of $62,412.05; (2) NOV agreed "on behalf of itself and Varco" that it would not "bring or maintain any claim or action against Auto-Dril" for infringement of the '142 Patent; (3) the parties agreed to file a joint motion to dismiss the pending litigation concerning the '142 Patent; and (4) "[e]xcept for claims arising from" the Settlement Agreement, each party agreed to release the other from various claims. The Settlement Agreement states that "[t]he Parties represent and warrant to each other that the person signing this Agreement on their respective behalf's [*sic*] is authorized to sign same and that the Agreement shall be binding upon any entity on whose

behalf this Agreement is signed." NOV also represented and warranted that "no other persons or entities have or have had any interest in the claims, demands, obligations, or causes of action referred to in this Agreement." The Settlement Agreement is governed by the laws of Texas. Despite only NOV and Auto-Dril being listed as parties to the Settlement Agreement, Greg Martin, Vice President of NOV, signed the Settlement Agreement on behalf of both NOV and Varco. In the final judgment dismissing the action, the district court retained jurisdiction over the Settlement Agreement "in the event of a dispute concerning that agreement, to interpret and enforce the agreement, if necessary."

In March 2015, Auto-Dril sued NOV for infringing U.S. Patent No. 6,994,172 (the "'172 Patent") in the United States District Court for the Western District of Texas in Waco (the "Waco Action"). Later that month, NOV filed a separate action against Auto-Dril in the Eastern District of Texas in Texarkana for breach of the Settlement Agreement (the "Texarkana Action"). Specifically, NOV asserted that it had been released from claims relating to the '172 Patent under the Settlement Agreement, that it had not infringed the '172 Patent, and that the '172 Patent was otherwise invalid, among other claims. In May 2015, Auto-Dril amended its complaint in the Waco Action and included a new count for fraud, alleging that NOV either knew or recklessly represented that it owned the '142 Patent throughout the Underlying Action when it in fact did not own that patent.

In January 2016, the court in the Waco Action granted a motion to transfer venue to the Southern District of Texas in Houston (the "Houston Action"). In February 2016, NOV and Auto-Dril filed a motion in the Texarkana Action stating that they had "agreed to resolve claims relating to the 2011 Settlement Agreement in this Court, and resolve infringement/validity claims regarding [the '172 Patent] in the . . . Southern District of Texas." The parties thus moved the court to, *inter alia*, (1) permit

NOV to file an amended complaint that only included contract claims and (2) provide Auto-Dril two weeks to answer the amended complaint, at which time it would need to assert any claims under the Settlement Agreement. The court in the Texarkana Action granted the motion. NOV subsequently amended its complaint in the Texarkana Action in accordance with its motion and the court's implementing order. In March 2016, Auto-Dril filed its answer and counterclaims, asserting the same claim for fraud that it brought in the Waco Action and a claim for breach of the Settlement Agreement as well. In June 2016, NOV again amended its complaint to include an additional breach-of-contract claim, alleging that Auto-Dril failed to make the remaining four payments under the Settlement Agreement. NOV now asserts that Auto-Dril failed to remit only the final three payments in accordance with testimony elicited at trial.

In March 2017, the court in the Texarkana Action ruled on the parties' cross motions for summary judgment. In its ruling, the court determined that NOV did not own the '142 Patent. NOV then moved to dismiss for lack of federal subject matter jurisdiction in April 2017. In its motion, NOV argued that because the court held that NOV never owned the '142 Patent, NOV lacked standing in the Underlying Action, and therefore, the court lacked jurisdiction to make rulings in the Underlying Action, including its order retaining jurisdiction over disputes involving the Settlement Agreement. The court disagreed, holding that NOV could not collaterally attack the court's jurisdiction in the prior, final Underlying Action based on principles of claim preclusion.

Meanwhile, the court in the Houston Action ruled that the '172 Patent was invalid and unenforceable, and Auto-Dril's claims in the Houston Action were eventually dismissed in April 2018.

In April 2021, as trial approached in the Texarkana Action, the district court in that case granted summary judgment for NOV on Auto-Dril's breach-of-contract counterclaim, reasoning that Auto-Dril "failed to produce evidence of damages." A jury trial was held later that month. The jury ultimately found that Auto-Dril did not "fail to comply with the [Settlement Agreement]," NOV "commit[ted] fraud against Auto-Dril," and Auto-Dril "should . . . have discovered the fraud" "in the exercise of reasonable diligence" by October 21, 2011. The jury awarded Auto-Dril $5,000,000 in compensatory damages for the fraud. NOV then moved for entry of judgment on the verdict and for judgment as a matter of law ("JMOL"), while Auto-Dril moved for entry of judgment on the jury's fraud and damages findings.

The district court ultimately granted NOV's motions with respect to Auto-Dril's fraud claim, denied the remaining motions, and dismissed NOV's breach-of-contract claim with prejudice. First, in ruling on the fraud claim, the court reasoned that the jury found that Auto-Dril should have discovered NOV's fraud by October 21, 2011 because that was the date on which Auto-Dril filed a motion to dismiss in the Underlying Action alleging that NOV did not own the '142 Patent. Because Auto-Dril entered into the Settlement Agreement in November 2011, the court ruled that a fraud "could not have 'arisen out of' an agreement signed weeks later." The court also noted that had it "not granted JMOL in NOV's favor on Auto-Dril's fraud claim, it would have entered a take-nothing judgment" because the fraud claim was otherwise barred under Texas's four-year statute of limitations. Second, the court exercised its inherent authority to dismiss NOV's claim for breach of the Settlement Agreement due to the jury's fraud finding. Specifically, the court held that NOV's repeated assertions that it owned the '142 Patent in the Underlying Action amounted to a "fraud on the court" and "an abuse of the judicial process." The court would not allow NOV to

No. 21-40648

maintain its breach-of-contract claim because, although "Auto-Dril's owner admitted to not making the last three payments required under the Settlement Agreement, the jury nonetheless found that Auto-Dril had not breached the Agreement."

Both parties now appeal the district court's rulings in the Texarkana Action. After the appeals had been filed, NOV filed a motion to dismiss both appeals for lack of subject matter jurisdiction, making similar arguments to those that it presented in the Texarkana Action. That motion has been carried with the case.

## II.

We begin by addressing NOV's two jurisdictional challenges: first, NOV asserts that federal subject matter jurisdiction is lacking over this entire action; second, NOV contends that Auto-Dril's fraud claim is outside the bounds of federal jurisdiction. "[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)). "Issues of subject matter jurisdiction are questions of law reviewed *de novo*." *Pershing, L.L.C. v. Kiebach*, 819 F.3d 179, 181 (5th Cir. 2016).

## A.

First, NOV argues that the district court's holding that NOV did not own the '142 Patent retroactively stripped the court in the Underlying Action of jurisdiction. NOV thus contends that the court never possessed jurisdiction over this case because the court in the Underlying Action lacked the authority to retain jurisdiction in the first instance.

6

No. 21-40648

Parties may not waive the issue of subject matter jurisdiction, and a court may likewise raise this issue at any time *sua sponte*. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment." *Id.* at 702 n.9; *see also Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940) ("If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error or appeal, be reversed for that cause. But they are not absolute nullities." (quoting *McCormick v. Sullivant*, 23 U.S. (10 Wheat.) 192, 199 (1825))). "The question is not whether the issue of subject matter was actually litigated, but instead whether the parties had the opportunity to raise the question." *Royal Ins. Co. of Am. v. Quinn-L Cap. Corp.*, 960 F.2d 1286, 1293 (5th Cir. 1992) (citing *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir. 1987)).

A federal court dismissing an action pursuant to Federal Rule of Civil Procedure 41(a)(2) may retain jurisdiction over the enforcement of a settlement agreement relating to that dismissal. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). A court may choose to exercise its retained enforcement powers based on its ancillary jurisdiction over the settlement agreement. *Id.* Here, in its order dismissing the Underlying Action pursuant to Rule 41(a)(2), the court retained its jurisdiction over the Settlement Agreement, which permitted the court to later enforce that agreement through its ancillary jurisdiction. But according to NOV, the court's ancillary jurisdiction was abrogated when it held that NOV never owned the '142 Patent, as this was the only basis for NOV's standing in the Underlying Action. Consequently, NOV contends that the court in the Underlying Action never had the authority to retain jurisdiction over the Settlement Agreement, and that court's order retaining jurisdiction cannot

7

presently serve as the jurisdictional anchor for the court in the Texarkana Action.

But NOV is now precluded from collaterally attacking the Underlying Action. "Under the doctrine of issue preclusion, 'a prior judgment . . . foreclos[es] successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.'" *Herrera v. Wyoming*, 139 S. Ct. 1686, 1697 (2019) (alteration in original) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). The Underlying Action was dismissed via a final order, and NOV was afforded the opportunity to litigate the issue of subject matter jurisdiction throughout the Underlying Action. *See Royal Ins. Co. of Am.*, 960 F.2d at 1293. NOV counters that it neither had the opportunity nor motive to litigate jurisdiction in the Underlying Action because it was the plaintiff in that suit. But our holding in *Royal Insurance* does not distinguish between plaintiffs and defendants, and we have subsequently applied that holding to litigants who were plaintiffs in their respective underlying actions. *See, e.g.*, *Frank C. Minvielle LLC v. Atl. Refin. Co.*, 337 F. App'x 429, 432–33 (5th Cir. 2009) (per curiam); *Winograd v. Fowler*, 184 F.3d 816 (5th Cir. 1999) (unpublished per curiam). Furthermore, NOV fails to cite any authority that would otherwise demonstrate that acting as a plaintiff in an underlying action or otherwise lacking motivation vitiates one's opportunity to litigate subject matter jurisdiction. NOV had an opportunity to litigate subject matter jurisdiction when it initially filed the Underlying Action, asserting in its complaint that "[t]his Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338." Indeed, every plaintiff filing a new action is required to represent the basis for the court's jurisdiction under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(1) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction. . . .").

NOV also argues that its jurisdictional argument is not precluded based on our holding in *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295 (5th Cir. 1985) (per curiam). In that case, the plaintiff, Giannakos, sued Scullin for failure to compensate for services rendered. *Id.* at 1297. Scullin then moved to dismiss for lack of subject matter jurisdiction, but the parties entered into a settlement agreement that was adopted by the court before it could rule on the pending motion. *Id.* Later, Giannakos applied to the court for an order to enforce the settlement agreement, which the court entered. *Id.* On appeal, Scullin contended that the court's latest order was invalid because it lacked jurisdiction over the underlying controversy. *Id.* Giannakos countered that Scullin was estopped from challenging the court's jurisdiction after already agreeing to the settlement agreement and that there were alternative bases for jurisdiction. *Id.* at 1297–98. We ultimately held that there were insufficient facts demonstrating that the district court possessed jurisdiction, and thus vacated the order enforcing the settlement agreement and remanded to the district court so that it could determine whether jurisdiction in fact existed. *Id.* at 1297–99.

NOV contends that the facts in *Giannakos* are akin to those in our case, and therefore, we should hold as the *Giannakos* Court did and permit a challenge to the district court's jurisdiction in the Underlying Action. We find this argument unpersuasive. It is unclear whether the proceedings in *Giannakos* were all part of a single case or two separate cases, *i.e.*, one that culminated in the settlement agreement and another concerning enforcement of the settlement agreement. In its opinion, the *Giannakos* Court does not specify whether the district court ever entered a final judgment that dismissed the initial matter upon the parties agreeing to settle—the only judgment mentioned is the judgment by the district court enforcing the settlement agreement. Therefore, it is plausible that all of the proceedings in *Giannakos* arose in a single case: Scullin merely challenged the

district court's jurisdiction over a continuous and unresolved single suit and did not collaterally attack a prior action. Furthermore, this reading harmonizes *Giannakos* with *Insurance Corp. of Ireland*, 456 U.S. 694, and *Chicot County Drainage District*, 308 U.S. 371, Supreme Court precedent that preceded *Giannakos* and which would control if such harmony is not possible. Accordingly, the district court had the requisite subject matter jurisdiction to enforce the Settlement Agreement.

**B.**

Alternatively, NOV argues that our recent decision in *Vikas WSP, Ltd. v. Economy Mud Products Co.*, 23 F.4th 442 (5th Cir. 2022), barred the district court in the Texarkana Action from considering Auto-Dril's fraud claim because that claim fell outside of the court's retained jurisdiction.

In that case, Vikas sued Economy for breach of contract. *Id.* at 447. The parties eventually agreed to a settlement, and the district court retained jurisdiction to enforce the settlement agreement when dismissing the action with prejudice. *Id.* at 448. Vikas later moved the court to enforce the settlement agreement. *Id.* At summary judgment on the enforcement action, the district court ruled for Economy on its counterclaim for fraud, holding that Vikas breached the settlement agreement and that its breach was so egregious that it must have fraudulently induced Economy to enter into the settlement agreement. *Id.* at 450, 447. On appeal, we reversed the district court's summary judgment ruling for Economy. First, we determined that the district court properly retained jurisdiction to enforce the settlement agreement but that its retention of jurisdiction did not "authorize the district court to reach new issues or issues that only relate to the settlement." *Id.* at 452. We reasoned that while a court "may decide 'whether and under what terms' to enforce the settlement, . . . it may go no further without an

independent basis for jurisdiction." *Id.* (quoting *Wise v. Wilkie*, 955 F.3d 430, 436 (5th Cir. 2020)).

Next, we held that the district court did not retain jurisdiction over Economy's fraud claim. Unlike other contractual defenses, we explained that, in Texas, fraud is also a distinct tort—"'an independent legal duty' that is 'separate from the existence of the contract itself.'" *Id.* (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 47 (Tex. 1998)). We thus held that even in a case of fraudulent inducement, "the fraud has no necessary connection with the settlement's enforcement or nonenforcement" and to rule that jurisdiction existed in such a case "would stretch retained jurisdiction too far." *Id.* at 452–53; *see also id.* at 453 n.2 (citing *Fazio v. Cypress/GR Hous. I, L.P.*, 403 S.W.3d 390, 398 (Tex. Ct. App. 2013) (en banc) ("While a contract undoubtedly can affect the scope of a legal duty to not commit fraud and is essential in determining the measure of damages for fraudulent inducement, the tort itself . . . does not arise from the contract's operation—it [is] a pre-contract tort to induce [the contract of sale].")).

The fraud claim in *Vikas* is similar to Auto-Dril's fraud claim in this case. Both claims contend that a counterparty to a settlement agreement fraudulently induced the party asserting its fraud claim into entering said settlement agreement. Accordingly, Auto-Dril's fraud claim is a tort claim falling outside the scope of the district court's retained jurisdiction.

Auto-Dril's attempt to distinguish *Vikas* is unavailing. Auto-Dril argues that the language the district court used to retain jurisdiction over the Settlement Agreement in this case is broader than the language used by the district court in *Vikas*. The relevant portion of the *Vikas* order reads: "This court retains jurisdiction to enforce the settlement." Final Dismissal Order, *Vikas WSP Ltd. v. Econ. Mud Prods. Co.*, No. 4:13-CV-3426 (Doc. 50) (Dec.

5, 2014). In the present case, the district court's implementing order reads: "this Court shall retain jurisdiction over the [Settlement Agreement], in the event of a dispute concerning that agreement, to interpret and enforce the agreement, if necessary." Without citation to authority, Auto-Dril asserts that the power to "interpret" the Settlement Agreement provides the district court with jurisdiction over tort claims requiring a court's interpretation of that agreement. Auto-Dril provides no analysis regarding its non-obvious reading of the court's implementing order. A less strained reading of the court's order in our case is that the two words "interpret" and "enforce" work together so that a court may interpret the Settlement Agreement to aid in the enforcement of that agreement.

Auto-Dril ascribes too much meaning to the word "interpret." To accept Auto-Dril's reading would allow a single inexplicit word to "stretch retained jurisdiction too far." *See Vikas*, 23 F.4th at 453. Therefore, the district court lacked the requisite subject matter jurisdiction to consider Auto-Dril's fraud claim.[1]

## III.

Our jurisdictional holding above leaves one non-mooted issue that Auto-Dril raises on appeal: whether the district court erred in granting summary judgment for NOV on Auto-Dril's counterclaim for breach of the Settlement Agreement.

We review a "grant of summary judgment de novo, applying the same legal standards as the district court." *Petro Harvester Operating Co. v. Keith*, 954 F.3d 686, 691 (5th Cir. 2020) (quoting *Tradewinds Env't Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009)). "Summary

---

[1] Auto-Dril appeals the district court's JMOL ruling on its fraud claim. We need not consider this appeal in light of our jurisdictional holding.

No. 21-40648

judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. Nature's Way Marine, L.L.C.*, 904 F.3d 416, 419 (5th Cir. 2018) (quoting FED. R. CIV. P. 56(a)).

Federal courts "look to state law for rules governing contract interpretation." *F.D.I.C. v. Firemen's Ins. Co. of Newark*, 109 F.3d 1084, 1087 (5th Cir. 1997) (per curiam). The Settlement Agreement is governed by the laws of Texas. Under Texas law,

> [i]n construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. . . . If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.

*Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citations omitted).

The elements of a claim for breach of contract are: "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). "The goal of measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach." *Tex. Ear Nose & Throat Consultants, PLLC v. Jones*, 470 S.W.3d 67, 79 (Tex. Ct. App.

2015). "The normal measure in such cases is the benefit of the bargain, which seeks to place the injured party in the economic position it would have been in had the contract been performed," *i.e.*, expectancy damages. *Id.*; *see also* 49 David R. Dow & Craig Smyser, Tex. Prac. Series: Contract Law § 10.7 ("It is sometimes said that expectancy damages are the 'normal measure' of damages. What this phrase probably means is that benefit-of-the-bargain damages is the most commonly sought measure or type of damages. It is not in any sense superior to the other measures." (footnote omitted)). Alternatively, a plaintiff may seek reliance damages, which are measured by "the amount necessary to compensate that party for a loss already suffered." *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 734 (Tex. 1981). Put another way, reliance damages "seek to put the injured party in the position he would have been in had he not relied on the promise." *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 866 (5th Cir. 1999) (citing *Fretz Constr. Co. v. S. Nat'l Bank of Hous.*, 626 S.W.2d 478 (Tex. 1982)); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997) ("Out-of-pocket [reliance] damages measure the difference between the value the buyer has paid and the value of what he has received."). Such damages include expenditures made by the aggrieved party in performance of the contract. *Mistletoe Express Serv. of Okla. City v. Locke*, 762 S.W.2d 637, 638 (Tex. App. 1988) (citing Restatement (Second) of Contracts § 349 (1981)); *see also* 24 Williston on Contracts § 64:4 (4th ed. 2022) ("This measure of recovery [for reliance damages] includes expenditures incurred by the nonbreacher in preparing to perform or in performance . . . .").

At summary judgment, the district court reasoned that Auto-Dril received the benefit of its bargain because it did not suffer either expectancy or reliance damages. According to the court, for expectancy damages, Auto-Dril was "in the same position it would have been in had NOV performed—

by owning the '142 Patent." And regarding reliance damages, the court held that Auto-Dril received the benefits it remitted for the $900,000 licensing fee: an end to the Underlying Action and "a license to practice the '142 Patent moving forward." On appeal, Auto-Dril argues that the district court incorrectly calculated its reliance damages. Auto-Dril contends that it never received a license for the '142 Patent from NOV because NOV did not own the patent, thus making the licensing fee wholly unnecessary.

It is undisputed that NOV did not own the '142 Patent at the time the Settlement Agreement was signed. And the Settlement Agreement states that Auto-Dril would be granted a license for the '142 Patent in exchange for the licensing fee. Apart from the exchange of the licensing fee and the license for the '142 Patent, the exchange between the parties in the Settlement Agreement was symmetrical: the parties agreed to dismiss the Underlying Action and mutually release one another from all related matters. It is thus far from obvious to us that the licensing fee was in exchange for anything other than the license, especially considering the symmetry of the remaining terms and their differing subject matter. Therefore, we are doubtful that Auto-Dril would have agreed to the remainder of the Settlement Agreement's terms—including agreeing to pay a $900,000 licensing fee— without receiving the license. If our doubts are indeed correct, then Auto-Dril's performance, *i.e.*, its $900,000 remittance, would likely constitute reliance damages. The parties devoted scant attention to this issue below (as they do in this court). So, at the very least, there was a genuine dispute of material fact regarding whether the parties would have entered into the Settlement Agreement absent a license for the '142 Patent, all else being equal.

NOV counters that, regardless of the above uncertainty, Auto-Dril received the benefits of its bargain because Varco, the true owner of the '142 Patent, *was* authorized to license the '142 Patent and covenanted not to sue

No. 21-40648

Auto-Dril for its use of the patent. But although Greg Martin, Vice President of NOV, signed the Settlement Agreement on behalf of Varco, the agreement does not list Varco as one of its parties. And Varco is otherwise mentioned only once in the Settlement Agreement. Under a section titled "Immunity for Existing Products": "NOV agrees, on behalf of itself and Varco . . . that it will not bring or maintain any claim or action against Auto-Dril . . . alleging that Auto-Dril's making, having made, using, selling, offering to sell, renting, leasing, using, importing or otherwise exploiting or disposing of the Navigator or Navigator Pro [devices subject to the Underlying Action] of Auto-Dril infringes the '142 Patent." The parties do not devote any meaningful analysis to this issue,[2] which was insufficiently addressed in the litigation below as well.

Consequently, two issues affecting the parties' bargain, and whether Auto-Dril suffered damages, remain unresolved: (1) whether they would have agreed to the terms of the Settlement Agreement knowing that NOV did not own the '142 Patent and (2) whether Varco is a party to the Settlement Agreement. Due to the unresolved ambiguity and lingering counterfactual uncertainty, we are unconvinced that there was no genuine dispute of material fact that Auto-Dril was not entitled to damages at summary judgment. This was the sole basis for the district court's dismissal of Auto-Dril's counterclaim for breach of the Settlement Agreement. Accordingly, we remand Auto-Dril's counterclaim to the district court.[3]

---

[2] Auto-Dril cites only one controlling case, *Willis v. Donnelly*, 199 S.W.3d 262 (Tex. 2006), for the proposition that "courts generally cannot bind a nonparty to a contract because the nonparty never agreed to the contract's terms." But this proposition is inapposite to the issue that Auto-Dril raised below and on appeal: whether Varco is a party to the Settlement Agreement, not whether it could be bound as a non-party.

[3] It is possible that the district court may not have to resolve both issues on remand. If Varco is a party to the Settlement Agreement, then the court need not address whether

16

No. 21-40648

## IV.

Next, we turn to the remaining issues raised by NOV, beginning with NOV's argument that the district court erred when it dismissed NOV's claim for breach of the Settlement Agreement under its inherent authority.

"We review de novo a district court's invocation of its inherent power and the sanctions granted under its inherent power for an abuse of discretion." *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014) (quoting *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010)). The courts have certain implied and inherent powers that are

---

the parties would have entered into the Settlement Agreement knowing that NOV did not own the '142 Patent. If Varco is indeed a party, then Auto-Dril would have received an actual license for the '142 Patent in exchange for the licensing fee upon execution of the Settlement Agreement.

The dissent contends that Varco was bound by the Settlement Agreement and that Auto-Dril received the benefit of its bargain, meaning that Auto-Dril breached the Settlement Agreement in failing to remit the final three installment payments. But that is belied by the text of the agreement. Varco is not listed as a party to the Settlement Agreement *in the section explicitly listing the parties*. No authority has been cited for the proposition that an entity may be bound by its signature alone in such a scenario. And the evidence surrounding the drafting of the Settlement Agreement is instructive, to the extent a court were to hold that the relevant provisions are ambiguous. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) ("Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation . . . and admit extraneous evidence to determine the true meaning of the instrument."). Auto-Dril specifically requested that both NOV and Varco be parties to the Settlement Agreement, but NOV expressly rejected including Varco. Furthermore, it is unclear whether NOV could effectively license the '142 Patent through its control of Varco solely through the parent-subsidiary relationship. While NOV agreed "on behalf of itself and [Varco] . . . that it [would] not bring or maintain any claim or action against Auto-Dril," nowhere did it explicitly promise to preclude a suit by Varco. Nor could it necessarily make such a guarantee. For example, NOV would have no way of preventing such a suit if Varco had been spun off or sold. That Auto-Dril appears to have received what it had sought is not synonymous with it receiving the benefit of its actual, bargained-for contract. To hold otherwise would impermissibly disregard the corporate form and ignore the text (and, if necessary, drafting history) of the Settlement Agreement.

17

"governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). These powers include the "outright dismissal of a lawsuit" and a court's ability to "vacate its own judgment upon proof that a fraud has been perpetrated upon the court." *Id.* at 45, 44. "Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45 (citation omitted). Accordingly, "we uphold a lower court's decision to invoke its inherent sanctioning power only if clear and convincing evidence supports the court's finding of bad faith or willful abuse of the judicial process." *Moore*, 739 F.3d at 730.

"To establish fraud on the court, 'it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)).

> Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*Rozier*, 573 F.2d at 1338 (citations omitted) (quoting *United States v. Int'l Tel. & Tel. Corp.*, 349 F. Supp. 22, 29 (D. Conn. 1972), *aff'd*, 410 U.S. 919 (1973)).

Here, NOV's conduct did not rise to the level of a fraud on the court. Specifically, there is not clear and convincing evidence that NOV was

cognizant that it did not own the '142 Patent while it was litigating the Underlying Action. In sanctioning NOV, the district court stated that "[i]n front of this Court, NOV accused Auto-Dril of infringing a patent that NOV had no right to assert," referring to the Underlying Action. The court also relied on the jury's finding that "NOV's conduct rose to the level of fraud." But the court's jury instructions state a more lenient standard for fraud than the standard required for a fraud on the court.[4] The key differences between these standards are the requisite intent and the unlawful conduct that is bound with such intent. As we explained in *Rozier*, "only the most egregious misconduct" qualifies as a fraud on the court. 573 F.2d at 1338 (quoting *Int'l Tel. & Tel. Corp.*, 349 F. Supp. at 29). In *Rozier*, all of the examples of egregious misconduct necessarily include the implicated party's willfulness to actively deceive. Here, though, the jury was instructed that it could find that fraud occurred upon a showing of mere recklessness—a less culpable state of mind than willfulness. Indeed, actions attributable to recklessness are more akin to the "[l]ess egregious misconduct" that the *Rozier* Court recognized did not constitute a fraud on the court. *Id.* (quoting *Int'l Tel. & Tel. Corp.*, 349 F. Supp. at 29). Relatedly, there is no evidence that NOV's assertions regarding its ownership of the '142 Patent in the Underlying

---

[4] The jury was instructed that:

Fraud occurs when—

1.  a party makes a material misrepresentation, and

2.  the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

3.  the misrepresentation is made with the intention that it should be acted on by the other party, and

4.  the other party relies on the misrepresentation and thereby suffers injury.

No. 21-40648

Action amounted to an "unconscionable plan or scheme . . . designed to improperly influence the court in its decision." *First Nat'l Bank*, 96 F.3d at 1573 (quoting *Rozier*, 573 F.2d at 1338).

The district court also provided no explanation as to how NOV abused the judicial process. *See Chambers*, 501 U.S. at 44–45. Furthermore, NOV's untrue assertions in the Underlying Action were devoid of the intent required to show "bad faith or willful abuse of the judicial process." *See Moore*, 739 F.3d at 730. That NOV committed a fraud on the court or otherwise abused the judicial process cannot be substantiated by clear and convincing evidence. Accordingly, the district court erred in invoking its inherent authority to dismiss NOV's claim for breach of the Settlement Agreement. Because it first dismissed NOV's claim for breach of the Settlement Agreement before addressing the merits, the district court never ruled on NOV's JMOL motion. Therefore, on remand, the district court should consider the merits of NOV's motion.

## V.

NOV also contends that the district court improperly allowed James Ray, Auto-Dril's founder, to provide expert testimony during trial, even though he was testifying as a lay witness. Ray testified that he believed he could stop remitting licensing fees for the '142 Patent because he was fraudulently induced into entering the Settlement Agreement.

We review a district court's rulings on the admission of lay and expert testimony for an abuse of discretion. *United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011). The opinion testimony of a lay witness is limited to testimony that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. "An opinion

is not objectionable just because it embraces an ultimate issue." *Id.* 704(a). But "Rule 704(a) 'does not allow a witness to give legal conclusions.'" *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (quoting *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999)). "In evaluating challenged testimony, the court must distinguish 'between an impermissible opinion on an ultimate legal issue and "a mere explanation of the [witness's] analysis of facts which would tend to support a jury finding on the ultimate issue."'" *United States v. Keys*, 747 F. App'x 198, 207 (5th Cir. 2018) (per curiam) (alteration in original) (quoting *United States v. Buchanan*, 70 F.3d 818, 833 n.20 (5th Cir. 1995)).

NOV argues that Ray's testimony included legal conclusions on multiple occasions. For example, Ray responded in the affirmative when asked, "do you believe you were fraudulently induced to enter into the [Settlement Agreement]." Later, he was asked for his "understanding and not a legal opinion" about whether "Auto-Dril was releasing a claim for fraudulent inducement of the [Settlement Agreement]." Ray responded, "It's my understanding, since it was fraudulent inducement, as come up awhile ago, that the agreement goes away."[5] In the context of Ray's testimony, these statements cannot be interpreted as anything other than legal conclusions. Even if they were admitted in order to demonstrate why Ray decided to cease paying the licensing fees, that would have no bearing on whether Auto-Dril had breached the Settlement Agreement and constitutes irrelevant testimony. *See* FED. R. EVID. 401(b) ("Evidence is relevant if . . . the fact is of consequence in determining the action."); *id.* 402

---

[5] NOV also references testimony that it objected to on different grounds or that was later stricken. This testimony is thus inapplicable to its arguments.

("Irrelevant evidence is not admissible."). We thus conclude that the district court abused its discretion in admitting the above testimony.

Auto-Dril admits that it failed to make the final three licensing-fee payments under the Settlement Agreement. Furthermore, it is not apparent that the other evidence introduced at trial supports a finding that Auto-Dril did not breach the Settlement Agreement. Therefore, while reconsidering NOV's JMOL motion on remand, *see supra* Part IV, the district court should consider how Ray's inadmissible testimony may have infected the jury's verdict on NOV's claim for breach of the Settlement Agreement.

## VI.

We hold that neither we nor the district court have subject matter jurisdiction over Auto-Dril's fraud claim. We REVERSE the ruling granting summary judgment for NOV on Auto-Dril's claim for breach of the Settlement Agreement. We REVERSE the dismissal of NOV's claim for breach of the Settlement Agreement and REMAND NOV's JMOL motion for reconsideration. In light of our evidentiary holding, *see supra* Part V, the district court is instructed to consider how its admission of James Ray's inadmissible testimony may have infected the jury's verdict on NOV's claim for breach of the Settlement Agreement when reevaluating NOV's JMOL motion.

No. 21-40648

Priscilla Richman, *Chief Judge*, concurring in part, dissenting in part:

I write separately because I would hold, as a matter of law, that Varco was bound by the Settlement Agreement and that Auto-Dril received all that it bargained for under the Settlement Agreement—the right to use the '142 patent without complaint from NOV or Varco. Despite receiving all that it bargained for, Auto-Dril failed to make the final three installment payments, thereby breaching the Settlement Agreement. I would affirm the district court's dismissal of Auto-Dril's breach-of-contract claim and remand NOV's breach-of-contract claim for the district court to determine the damages owed by Auto-Dril. I concur in the majority opinion in all other respects.

The Settlement Agreement expressly extended its reach beyond NOV and Auto-Dril as parties and also bound Varco. Greg Martin signed the Settlement Agreement *on Varco's behalf*, and the agreement stated that it "shall be binding upon *any entity on whose behalf this Agreement is signed*." Martin had been a vice president at Varco. However, prior to the Settlement Agreement, all Varco employees and nearly all Varco assets were transferred to NOV. At that time, Martin became an NOV vice president. He was therefore well positioned to sign on behalf of Varco. Moreover, all agree that NOV was a party to the agreement, and the agreement stated that "NOV agrees, *on behalf of itself and Varco*, . . . that it will not bring or maintain any claim or action against Auto-Dril" relating to the '142 patent. This language would be meaningless if Varco is not bound by the agreement. It is "our duty . . . to give effect to all contract provisions, and render none meaningless."[1] The majority opinion asserts in footnote 3 that "[w]hile

---

[1] *King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 193 (Tex. 2002) (citing *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)).

No. 21-40648

NOV agreed 'on behalf of itself and [Varco] . . . that it [would] not bring or maintain any claim or action against Auto-Dril,' nowhere did it explicitly promise to preclude a suit by Varco." I simply cannot square that assertion with the NOV's promise and representation in the Settlement Agreement that "on behalf of itself and [Varco] . . . it [would] not bring or maintain any claim or action against Auto-Dril." This is a plain statement that neither NOV nor Varco would sue Auto-Dril. Varco's Vice-President signed this agreement on behalf of Varco.

Auto-Dril bargained for the right to use the '142 patent unburdened by claims of infringement by NOV and Varco, and it received just that. The Settlement Agreement stated that, in exchange for the licensing fee of $900,000 to be paid in sixteen quarterly installments of $62,412.05, Auto-Dril would face no infringement claims by NOV or Varco. Just as the agreement required, neither NOV nor Varco brought or maintained any claims against Auto-Dril relating to the patent. Both NOV and Varco acted in accordance with the Settlement Agreement.

However, NOV did not receive the full benefits of its bargain because Auto-Dril failed to remit the final three payments.[2] NOV "tendered performance as the contract required," but Auto-Dril "breached the contract by failing to perform or tender performance as the contract required."[3] As a result, NOV received less money than was promised under

---

[2] *See Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 457 (5th Cir. 2022) (stating that whether breach occurred depended on whether party "was 'paid in full' as the settlement required").

[3] *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

No. 21-40648

the agreement, "sustain[ing] damages as a result of the breach."[4]  Therefore, Auto-Dril breached the Settlement Agreement as a matter of law.

*        *        *

I would affirm the district court's dismissal of Auto-Dril's breach-of-contract claim and remand NOV's breach-of-contract claim for the district court to determine the damages owed by Auto-Dril as a result of its breach.

---

[4] *Id.*